1  Christopher E. Angelo [70007]
   Joseph Di Monda [184640]
2  ANGELO & DI MONDA, LLP
   1721 N. Sepulveda Blvd.
3  Manhattan Beach, California 90266-5014
   Telephone: 310-939-0099
4  Fax: 310-939-0023

5  Attorneys for Defendants, Bun Bun Tran and Le Thi Nguyen

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  PROGRESSIVE WEST INSURANCE        NO. 07- CV 1999 JAH (POR)
    COMPANY, an Ohio corporation,
12                                     **DEFENDANT BUN TRAN'S MOTION
          Plaintiffs,                  FOR SANCTIONS AGAINST
13                                     PLAINTIFF PROGRESSIVE WEST INS.
    v.                                 CO. AND ITS ATTORNEYS ROBBIE &
14                                     MATTHAI; MEMORANDUM OF
    BUN BUN TRAN, LEONEL ARRELLANO,    POINTS AND AUTHORITIES IN
15                                     SUPPORT THEREOF;
          Defendants.                  DECLARATIONS OF JOSEPH DI
16                                     MONDA, ESQ., CHRISTOPHER E.
                                       ANGELO, ESQ. AND ANH Q.D.
17                                     NGUYEN, ESQ.**

18                                     Time:    2:30 p.m.
                                       Date:    June 16, 2008
19                                     Ctrm.:   11
                                                940 Front Street
20                                                San Diego, CA 92101

21

22       **TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

23       **PLEASE TAKE NOTICE** that on June 16, 2008, at 2:30 p.m., or as soon

24  thereafter as the matter may be heard in the above-entitled court, located at 940 Front

25  Street, San Diego, CA 92101, defendant and real party in interest Bun Bun Tran, by and

26  through his guardian ad litem Le Thi Nguyen, will move the court for an Order imposing

27  sanctions upon Progressive West Insurance Company and its attorneys Robbie & Matthai

28

                                       1

for the filing of a frivolous lawsuit, in bad faith and for attempting to amnipulte the federal judiciary in a scheme designed to obtain the default of its insured and defendant Leonel Arrellano so as to escape any potential bad faith liability arising out of an action in the San Diego Superior Court.

Bun Tran will requests that the Federal District Court, using its inherent powers: 1) Order Progressive to not file another complaint against Arrellano in federal court without paying for an independent attorney to represent him pursuant to California Civil Code § 2860;  2) Order Progressive to pay for and retain an independent attorney now to inform Arrellano of what Progressive attempted to do to him, what Progressive's federal complaint means and what could have happened had Progressive been successful in taking his default; 3) Order Progressive and its attorneys to pay monetary sanctions to the Court for causing a waste of judicial resources and for their attempt to manipulate the judicial system and for omitting documentary evidence in papers submitted to the Court.

The motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declarations of Joseph Di Monda, Esq, Christopher E. Angelo, Esq., Anh Q.D. Nguyen, Esq., attached exhibits and the pleadings and papers filed herewith.

May __13__, 2008

ANGELO & DI MONDA, LLP

By: ___S/Joseph Di Monda___
Christopher E. Angelo
Joseph Di Monda
Attorneys for Defendants,
Bun Bun Tran and Le Thi Nguyen

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

II.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 1

    A.    The Accident Giving Rise to Progressive's Liability . . . . . . . . . . . . . . . . p. 1

    B.    The State Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 2

    C.    Progressive Rejected Tran's Policy Limit Demand for
        Arrellano's Policy Limits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 2

    D.    The Federal Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 3

    E.    Progressive Engaged in A Scheme to Manipulate Both the
        State and Federal Courts to Escape its Bad Faith. . . . . . . . . . . . . . . . . p. 4

III.  PROGRESSIVE'S COMPLAINT FOR DECLARATORY RELIEF
     WAS FRIVOLOUS, TOTALLY WITHOUT MERIT, AND NO
     REASONABLE ATTORNEY WOULD HAVE FILED IT . . . . . . . . . . . . . . . p. 5

IV.   PROGRESSIVE FILED THE FEDERAL ACTION FOR AN
     IMPROPER PURPOSE; IT IS A SHAM PLEADING DESIGNED
     TO MANIPULATE THE JUDICIAL PROCESS . . . . . . . . . . . . . . . . . . . . .p. 7

    A.    Progressive's Manipulation of the Federal Courts . . . . . . . . . . p. 7

    B.    Progressive's Manipulation of the State Courts . . . . . . . . . . . . . p. 9

    C.    Progressive's Motivation To Manipulate the Courts . . . . . . . . . p. 12

V.    PROGRESSIVE HAS USED ITS FEDERAL LAWYERS
     TO MISLEAD THIS COURT BY OMITTING ALL DAMAGING
     EVIDENCE IN PAPERS SUBMITTED TO THIS COURT . . . . . . . . . . . . . p. 13

VI.   THIS COURT HAS THE POWER TO IMPOSE SANCTIONS AGAINST
     PROGRESSIVE AND ITS ATTORNEYS . . . . . . . . . . . . . . . . . . . . . . . . . p. 15

    A.    This Court May Sanction Both Progressive and Its Attorneys. . . . . . . . p. 15

    B.    Progressive and Its Attorneys Acted in Bad Faith . . . . . . . . . . . . . . p. 15

    C.    Both Progressive and its Attorneys Should be Sanctioned . . . . . . . . . p. 16

VII.  REQUESTED SANCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 17

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 17

Declaration of Joseph Di Monda, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 17

Declaration of Christopher E. Angelo, Esq.. . . . . . . . . . . . . . . . . . . . . . . . . . . p. 21

i

# TABLE OF AUTHORITIES

**Cases**

*Antonio v. Solomon*
(1967) 42 FRD 320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 8

*Budget Rent-A-Car, Inc. v. Higashiguchi*
(9th Cir. 1997) 109 F.3d 1471 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 6

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*
(1991) 498 U.S. 533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

*Buster v. Greisen*
(9th Cir. 1997) 104 F.3d 1186 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 15

*Cabell v. Petty*
(4th Cir. 1987) 810 F.2d 463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

*Chambers v. NASCO, Inc.*
(1991) 501 U.S. 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 14

*Eastway Construction Corp. v. City of New York*
(2nd Cir. 1985) 762 F.2d 243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 15

*Flatt v. Superior Court*
(1994) 9 Cal.4th 275 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 9

*Hartford, Ins. Group v. Lou-Con Inc.*
(5th Cir. 2002) 293 F.3d 908 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 7

*Johnson v. Wattenbarger*
(7th Cir. 2004) 361 F3d 991 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

*Lazzarevich v. Lazzarevich*
(1952) 39 Cal.2d 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 7

*Lipsig v. National Student Marketing Corp.*
(DC Cir. 1980) 663 F.2s 178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .p. 15

*Lockary v. Kayfetz*
(9th Cir. 1992) 974 F.2d 1166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 14

*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*
(1995) 36 Cal.App.4th 1832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 9

*Nationwide Mut. Ins. Co. v. Rowles by Rowles*
(E.D. Pa. 1993) 818 F. Supp. 852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 6

*Smith v. Ricks*
(9th Cir. 1994) 31 F.3d 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*
(1999) 72 Cal.App.4th 1422. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 7, 9

ii

*U.S. v. Shaffer Equipment Co.*
(1993) 11 F.3d 450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 13

*Valhal Corp. v. Sullivan Assocs., Inc.*
(3rd Cir. 1995) 44 F3d 195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

*Williams v. Superior Court*
(1996) 46 Cal.App.4th 320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 13

*Willy v. Coastal Corp.*
(1992) 503 U.S. 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 15

*Zaldivar v. City of Los Angeles*
(9th Cir. 1986) 780 F.2d 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5, 16

**Statutes**

Federal Statutes

28 USCA § 1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 5

Fed. Rules of Civ. Proc. Rule 11(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 15

State Statutes

California Civil Code
Section 2860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 16

California Code of Civil Procedure
Section 2033.250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p. 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Bun Bun Tran, by and through his Guardian ad Litem, Le Thi Nguyen ("Nguyen") requests that this Court use its inherent power to sanction Progressive West Insurance Company ("Progressive") and its attorneys, Robbie & Matthai, for the bad faith filing of frivolous pleadings and for intentional misleading and deceptive conduct in this litigation designed to manipulate the courts and abuse the judicial process. Said conduct as described more fully herein, also violates Rule 11.

Sanctions are appropriate here because the filing of this federal lawsuit was part of a larger scheme by Progressive to use both the federal and state courts as unwitting accomplices in order to obtain Leonel Arrellano's ("Arrellano") default in this litigation, escape its bad faith and leave Arrellano with a huge ten figure judgment. Progressive, with the assistance of Arrellano's lawyers in the state lawsuit has attempted to manipulate both the federal and state judicial systems to protect itself and AIG, another insurance carrier in the state action.

### II.    RELEVANT FACTS

#### A.    The Accident Giving Rise to Progressive's Liability

On November 18, 2006, Arrellano was intoxicated and failed to stop at a stop sign. Bun Tran ("Tran") had the right-of-way and his vehicle was crossing an intersection when Arrellano collided with Tran. Arrellano fled the accident scene, was subsequently arrested, and charged with violations of Veh. Code § 23153, DUI causing injuries, Veh. Code § 12500(a), driving without a license and Veh. Code § 20001, Hit and Run with injuries. Said violations are felonies. Exh. 1, Arrest Report; Decl. of Christopher E. Angelo.

Tran was catastrophically injured and was taken to the U.C. San Diego Medical Center where he stayed for approximately 3 months in a coma. Tran is presently at Coronado Sharp Medical Center in a non-communicative vegetative state. Tran's future lifetime medical care costs will be in the range of $40 million dollars. Decl. of

1

1  Christopher E. Angelo.

2       Arrellano is an indigent illegal alien who does not speak, read or understand

3  English. Decl. of Christopher E. Angelo, Esq. Arrellano pled guilty to various State

4  felonies and is currently incarcerated and serving approximately 6 years at the Sierra

5  Conservation Center in Northern California. Arrellano will be deported to Mexico upon

6  completion of his sentence. Decl. of Christopher E. Angelo.

7      **B.**    **The State Action**

8       Tran, by and through his guardian ad litem Nguyen filed a state personal injury

9  action against: 1) Arrellano; 2) Brinker International Inc., dba Chili's Restaurant

10  ("Chili's") Arrellano's employer; 3) Patricia Cole; and, 4) the City of San Diego. *Tran v.*

11  *Arrellano et al.*, San Diego Superior Court Case No. 37-2007-00065432-CU-PA-CTL,

12  the Hon. Ronald L. Styn, Judge. ("the State Action"). Exhibit 2, State complaint. See

13  Request for Judicial Notice.

14       Progressive has a duty to defend and indemnify Arrellano for the automobile

15  accident with Tran.

16      **C.**    **Progressive Rejected Tran's Policy Limit Demand for Arrellano's**

17             **Policy Limits.**

18       Arrellano has a $15,000 automobile liability insurance policy issued by

19  Progressive. Tran's attorney at the time was Anh Q. D. Nguyen. He made a policy limit

20  demand on Progressive requesting that Progressive tender Arrellano's $15,000 policy

21  limit in return for a complete release of all claims. Exh. 3, Jan. 26, 2007 letter from Anh

22  Nguyen, Esq., Decl. of Anh Q.D. Nguyen, Esq.

23       In a series of letters, Progressive refused to pay Arrellano's policy limits and

24  denied Tran's policy limit demand. Exhs. 4-6, Letters from Progressive; Decl. of Anh

25  Q.D. Nguyen, Esq. Progressive has still not made any offer to pay Arrellano's $15,000

26  policy limit. Decl. of Anh Q.D. Nguyen, Esq.

27      **D.**    **The Federal Action**

28       With the State Action pending, Progressive filed this action for declaratory relief

1   ("the Federal Action") requesting this Court to declare that it did not commit bad faith in

2   its handling of the policy limit demand arising out of the State Action and that it would

3   not be liable for any over-limits bad faith in the event Arrellano is adjudged to owe Tran

4   more than $15,000.  Progressive knew that Arrellano was indigent and incarcerated

5   because it was paying for his State Action defense.  Decl. of Christopher E. Angelo, Esq.

6   Despite knowing that Arrellano had counsel, Progressive served Arrellano with the

7   federal summons and complaint at the Sierra Conservation Center, bypassing his state

8   lawyers.

9        Progressive knew that Tran was in a coma and represented by counsel.  Despite

10  that knowledge, Progressive did not contact Tran's attorneys to even inform them of its

11  lawsuit.  Instead, Progressive use substituted service on Tran's guardian ad litem, who

12  also does not speak or read English, to serve the federal summons and complaint on Tran,

13  thereby also bypassing Tran's lawyers.  Exh. 7, Proof of Service on federal summons and

14  complaint; Decl. of Christopher E. Angelo, Esq.

15       On or about November 24, 2007, Tran moved to dismiss the Federal Action for

16  lack of diversity jurisdiction.  Progressive opposed Tran's motion and the parties

17  completed briefing on or about January 2, 2008.  *See*, Request for Judicial Notice.

18       On January 7, 2008, this Court Ordered that the oral arguments on Tran's motion

19  to dismiss be vacated and that the Court would issue its ruling on Tran's Motion to

20  Dismiss in due course.  *See*, Request for Judicial Notice.  Because Arrellano was not

21  represented by counsel he never made an appearance in the Federal Action.

22       On or about April 8, 2008, Progressive requested that the clerk of the U.S. District

23  Court enter default against Arrellano due to his failure to file a responsive pleading to its

24  federal complaint.  *See*, Request for Judicial Notice., Progressive's Requests to Enter

25  Default Against Arrellano.  *See* Request for Judicial Notice.

26       On or about April 9, 2008, Tran, on behalf of himself, moved this Court to set

27  aside Arrellano's default.  Tran's Motion to Set Aside Default.  *See* Request for Judicial

28  Notice.

On April 9, 2008, the Clerk of the U.S District Court entered Arrellano's Default. *See* Request for Judicial Notice.

On or about April 23, 2008, Progressive filed and served notice that it was presenting its Application for Default Judgment against Arrellano. Progressive's Application for Default Judgment against Arrellano. *See* Request for Judicial Notice.

On April 29, 2008, this Court Ordered that Progressive's Federal Action be dismissed in its entirety against all parties, including Arrellano, for lack of diversity jurisdiction. Order Granting Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. *See* Request for Judicial Notice.

As a result of the dismissal, all matters related to Arrellano's default became moot.

**E.    Progressive Engaged in A Scheme to Manipulate Both the State and Federal Courts to Escape its Bad Faith.**

Progressive realizes that if Arrellano's adjudicated share of Tran's damages exceed Arrellano's $15,000 liability policy limit, that either Arrellano or Tran, through Arrellano's assignment of his bad faith rights against Progressive, may be found guilty of bad faith. Progressive could then become liable for Arrellano's over-limit judgment.

Progressive, knowing that it rejected Tran's policy limit demand, thereafter engaged in a scheme, using its state lawyers, and both the state and federal judicial systems, which if it had been successful may have resulted in Progressive escaping its bad faith, leaving its insured Arrellano with an uninsured multi-million dollar judgment, and leaving Tran, who is in a coma, as a ward of the State, with the taxpayer paying for his medical care, all with the help of Progressive State Action lawyers.

Part of Progressive's scheme was to file a frivolous federal complaint against its insured Arrellano for declaratory relief asking this Court to declare that Progressive did not commit bad faith. Progressive and its lawyers knew that this Court did not have jurisdiction because the minimum amount in controversy did not meet the $754,000 threshold. Progressive knew Arrellano could not defend himself. Progressive intended to keep Arrellano without counsel and affirmatively refused to pay for Arrellano's defense

1  in the Federal Action. Progressive knew that without counsel Arrellano default could be
2  taken. Progressive also attempted to short notice Tran by using substituted service on his
3  Mother by leaving the summons and complaint with a neighbor. Decl.of Joseph Di
4  Monda. Progressive's service violated California law. Progressive knew Tran was
5  represented by counsel but never bothered to contact his State Action lawyers to inform
6  them of the pending federal lawsuit.

7      What Progressive did not count on was the Tran's lawyers would find out about
8  the Federal Action with sufficient time to file a motion to dismiss.

9  **III.    PROGRESSIVE'S COMPLAINT FOR DECLARATORY RELIEF WAS**
10          **FRIVOLOUS, TOTALLY WITHOUT MERIT, AND NO REASONABLE**
11          **ATTORNEY WOULD HAVE FILED IT**

12      Progressive's Federal Action had no merit because the federal court lacked
13  jurisdiction and Progressive knew of the jurisdictional problems. Diversity jurisdiction
14  exists only where the amount in controversy exceeds $75,000.00. 28 USCA § 1332(a).
15  The jurisdictional issues related to Progressive's complaint are straight out of a first year
16  law school civil procedure textbook.

17      Progressive had an affirmative duty to investigate both law and fact to avoid the
18  filing of a frivolous complaint. *Business Guides, Inc. v. Chromatic Communications*
19  *Enterprises, Inc.* (1991) 498 U.S. 533, 550. Moreover, when determining if the pleading
20  was frivolous or filed in bad faith, the standard is an objective standard, not subjective,
21  and even applies to frivolous pleadings which are filed due to inexperience and
22  incompetence. *Zaldivar v. City of Los Angeles* (9th Cir. 1986) 780 F.2d 823, 831; *Cabell*
23  *v. Petty* (4th Cir. 1987) 810 F.2d 463, 466. Progressive finds no relief by operating with
24  an "empty head." *Smith v. Ricks* (9th Cir. 1994) 31 F.3d 1478, 1488.

25      Progressive's pleadings are frivolous and filed in bad faith because  the law is well
26  settled that when the dispute involves a contract amount diversity jurisdiction will only
27  exist if the contract damages exceed the diversity minimum. *Valhal Corp. v. Sullivan*
28  *Assocs., Inc.* (3rd Cir. 1995) 44 F3d 195, 209; *Johnson v. Wattenbarger* (7th Cir. 2004)

1    361 F3d 991, 993.

2        As applied here, the law is well settled that a party cannot meet the jurisdictional

3    amount by seeking a declaration of additional extracontractual damages not in issue at

4    that time. *Nationwide Mut. Ins. Co. v. Rowles by Rowles*, (E.D. Pa. 1993) 818 F. Supp.

5    852. Moreover, in declaratory judgment suits involving liability insurance policies, the

6    test of jurisdiction is the maximum amount for which the insurer might be liable under the

7    policy. *Budget Rent-A-Car, Inc. v. Higashiguchi*, (9th Cir. 1997) 109 F.3d 1471, 1473.

8        Despite this knowledge, Progressive attempted to include extra-contractual

9    damages in an attempt to meet the minimum requirements for diversity. One only need to

10   read Progressive's complaint to verify what it was attempting to do.

11       Moreover, despite this clear prohibition on the filing of cases where the diversity

12   jurisdiction is based upon extra-contractual liability, Progressive not only admitted in its

13   complaint that the insurance policy was capped at $15,000, but that it was seeking

14   declaratory relief that its behavior in allegedly denying the policy limit demand did not

15   expose it to extra-contractual liability. This is exactly what the law prevents Progressive

16   from requesting. Progressive would have known this had it fulfilled its duty to

17   investigate the law.

18       Additionally, Progressive made no attempt to hide the fact that it was including

19   speculative extra-contractual liability when it argued in its opposition to Tran's Motion to

20   Dismiss, that the measure of damages is not the $15,000 insurance contract cap, but the

21   potential bad faith damages which Progressive may face in the future. *See,* Progressive's

22   Opposition to Tran's Motion to Dismiss. Progressive's Opposition underscores the fact

23   that it knew of this simple first year law school jurisdictional concept when it cited to

24   *Hartford, Ins. Group v. Lou-Con Inc.* (5th Cir. 2002) 293 F.3d 908.

25       Hence, the lawsuit had no merit and was filed for an improper purpose, to obtain

26   Arrellano's default and try to use this Court to circumvent the State Action and the

27   anticipated bad faith overlimits lawsuit. Had Tran's lawyers not obtained the federal

28   summons and complaint in time to file the Motion to Dismiss, Progressive may have

gotten away with its scheme.

## IV.    PROGRESSIVE FILED THE FEDERAL ACTION FOR AN IMPROPER PURPOSE; IT IS A SHAM PLEADING DESIGNED TO MANIPULATE THE JUDICIAL PROCESS

### A.    Progressive's Manipulation of the Federal Courts

Progressive filed the Federal Action knowing that Arrellano would not be able to defend himself because it engaged in affirmative conduct designed to prevent Arrellano from obtaining an attorney to represent him. Exh. 8, Letter from Arrellano's State Action lawyers verifying that Progressive refused to pay for Arrellano's defense in the Federal Action. By so doing, Progressive was manipulating the Federal Action in a manner designed to obtain Arrellano's default. Progressive had no intention of permitting Arrellano to defend the Federal Action.

For example, Progressive knew that Arrellano was incarcerated, indigent and could not read, speak or understand English because it was paying a lawyer to defend Arrellano in the State Action. Hence, Progressive was also the lawyer's client. An attorney represents two clients, the insured and the insurer." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422. The knowledge of Arrellano's State Action lawyers is imputed to Progressive because "a person is held to know what his attorney knows and should communicate to him." *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50.

Despite this knowledge, Progressive sued Arrellano in federal court and refused to pay for Arrellano's defense. Arrellano's Progressive paid lawyers in the State Action claim that they requested that Progressive pay for an attorney to defend Arrellano in the Federal Action. According to Arrellano's State Action lawyers, Progressive refused to pay for Arrellano's defense costs and therefore Arrellano's lawyers did not file any responsive pleadings on his behalf to prevent his default. Decl. of Joseph Di Monda, Esq.

When Tran's lawyers, Angelo & Di Monda, found out about the Federal Action, they contacted Arrellano's State Action lawyers and informed them that they could obtain

1  legal counsel for Arrellano in the Federal Action. Exhibit 9, Letter from Angelo & Di

2  Monda; Decl. of Christopher E. Angelo, Esq.

3      Even more indicative of the manipulation of the process is the fact that although

4  Arrellano's State Action lawyers admitted that they were not representing Arrellano in the

5  defense of the federal action because Progressive would not pay them, Arrellano's State

6  Action lawyers told Angelo & Di Monda that they were not permitted to have an

7  independent lawyer contact Arrellano, nor could they have any other attorney contact

8  Arrellano for any reason because he was already represented by counsel.  Arrellano's

9  Progressive paid lawyers made veiled threats of State Bar action if Angelo & Di Monda

10  attempted to obtain legal counsel for Arrellano in the Federal Action.  Decl. of

11  Christopher E. Angelo, Esq.  *See* Exhibit 10, Letter from Winet instructing Angelo & Di

12  Monda not to have any attorney contact his client.

13      Moreover, Tran's Motion to Dismiss for lack of jurisdiction constituted an

14  appearance which prevented his default from being taken.  Arrellano's default could have

15  been prevented had Arrellano's State Lawyers simply filed a joinder in Tran's motion to

16  dismiss.  Any response indicating an intent to defend prevents entry of default.  *Antonio v.*

17  *Solomon* (1967) 42 FRD 320, 322.  This raises a question that Tran would like this Court

18  to investigate; why didn't Arrellano's lawyers do anything to prevent his default in the

19  Federal Action.

20      Progressive, having assured themselves that Arrellano was not represented by

21  counsel in the Federal Action filed a Notice of Entry of Default against its own

22  incarcerated and indigent insured Arrellano for his failure to make an appearance in the

23  Federal Action.  A failure which Progressive engineered by the filing of a frivolous

24  federal complaint and denial of a defense.

25      Progressive knows that the reason Arrellano had not made an appearance was

26  because he has no money to pay for a lawyer, cannot read the complaint, and does not

27  know what it means or what to do even if he could read the complaint.

28      By filing the Federal Action Progressive was attempting to use the Federal courts

8

07- CV 1999 JAH (POR)

1   to do an end run around the State Court Action by obtaining Arrellano's default. Had

2   Progressive been successful, it would then argue that it is not responsible for its own

3   alleged bad faith against Arrellano relative to an overlimits judgment in the State Action.

4          Progressive's entire motivation was to manipulate the system and escape liability

5   for its bad faith. That is why Progressive filed a frivolous Federal Action. Sadly, it

6   appears Arrellano's Progressive paid lawyers went along with the scheme.

7          **B.      Progressive's Manipulation of the State Courts**

8          At the same time Progressive was attempting to manipulate the federal judiciary, it

9   was also using its lawyers to manipulate the State court system.

10         This Court should know that Arrellano's Progressive paid lawyers, who evidently

11  cooperated with Progressive to obtain Arrellano's default in the Federal Action, also

12  represented AIG in other lawsuits. Exh. 11, Letter from Winet admitting his law firm

13  also represents AIG. AIG is the insurer for Chili's, another defendant in the State Action.

14         Pursuant to California law, AIG was also a client of Arrellano's lawyers. "The

15  issue of whether an attorney-client relationship is formed between an insurance company

16  and the counsel it hires to defend an insured has arisen in several contexts. In analyzing

17  these situations, the courts have described counsel's representation as 'triangular.'

18  (citations omitted). In other words, the attorney represents two clients, the insured and

19  the insurer." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th

20  1422, 1428-1429.

21         The "courts and ethical codes alike prohibit an attorney from simultaneously

22  representing two client adversaries, even where the substance of the representations are

23  unrelated." *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832,

24  1840 (citing *Flatt v. Superior Court*, (1994) 9 Cal.4th 275, 285. *See State Farm Mutual*

25  *Auto. Ins. Co., v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422.

26         This prohibition did not stop Arrellano's Progressive paid lawyers from

27  representing Arrellano even though its other client, AIG, had an adverse interest.

28         On March 21, 2008, while the federal action was pending, Chili's, who would be

1  jointly and severely liable for Arrellano's damages, propounded Requests for Admissions

2  ("RFA") against Arrellano, asking him to make damaging admissions which would

3  permit Chili's to escape, or severely reduce its liability.  Chili's Requests for Admission

4  to Arrellano, Set Two.  Request for Judicial Notice.

5      Although Arrellano's responses were not due until April 28, 2008, Arrellano

6  responded to Chili's RFA's on April 3, 2008, just 14 days later and 21 days before he was

7  required to serve his responses.  Arrellano's Responses to Chili's RFA's Set Two.

8  Request for Judicial Notice.

9      When Tran propounded discovery against Arrellano, Arrellano's Lawyers asked

10  for extension of time to respond because they claimed it was difficult to communicate

11  with Arrellano given his incarceration.  Decl. of Christopher E. Angelo, Esq.  Suddenly

12  Arrellano's Lawyers can turn around Chili's discovery in less than 2 weeks.

13     The trial date for the State Action is August 1, 2008.  The last day to serve a

14  motion for summary judgment in the State Action was April 21, 2008.

15     On April 4, 2008, the day after Arrellano mailed his responses to Chili's, Chili's

16  mailed its MSJ against Tran, using all of Arrellano's damning admissions in a manner

17  which could assist Chili's and AIG in escaping liability for the Accident.

18     Chili's was able to incorporate Arrellano's responses to its RFA's into its MSJ

19  before Chili's even could have received Arrellano's responses.  Decl. of Joseph Di

20  Monda.  The ability of Chili's to incorporate Arrellano's responses, which it had not yet

21  received, in its MSJ could not be accomplished without the cooperation of Arrellano's

22  Progressive paid Lawyers.

23     This cooperation raises a number of issues which raise questions related to abusing

24  the judicial systems.  First, how did Chili's use Arrellano's responses in an MSJ which it

25  filed on April 4, 2008, when Arrellano did not even mail his responses to Chili's until

26  April 3, 2008 and Chili's could not have received them until the next day at the earliest?

27  How was Chili's able to draft, serve and file a very long and complicated summary

28  judgment motion and statement of undisputed facts using the responses from Arrellano

10

1   which it could not have received until the next day?

2       The second issue raised is that Arrellano's verifications to the damaging RFA's are

3   dated March 3, 2008, 3 weeks before Chili's even mailed the RFA's to his attorneys.

4       The third issue raised by Arrellano's responses is that pursuant to Code of Civ.

5   Proc. § 2033.250, Arrellano did not have to serve his RFA responses until April 28, 2008,

6   which coincidently was the last day Chili's had to file a MSJ.  However, had Arrellano

7   taken the time permitted by the CCP § 2033.250 to respond, Chili's may not have been

8   able to file its MSJ.

9       Finally, why would Arrellano's Progressive paid lawyers permit him to quickly

10  serve damaging responses to Chili's RFA's which they knew would be used to deflect all

11  responsibility from Chili's and AIG and back to Arrellano, leaving Arrellano with no

12  possibility of equitable contribution from Chili's.  At the very least Arrellano's Lawyers

13  should have prevented this by taking the code permitted time to respond, thereby

14  zealously advocating for their client Arrellano.  Instead it appears that Arrellano's lawyers

15  protected AIG, their other client, and also protected Progressive by simultaneously

16  permitting it to take Arrellano's default in the Federal Action.

17      It becomes evident that Arrellano's Progressive paid lawyers have not advocated in

18  his interests and have specifically failed to act to Arrellano's detriment in both the Federal

19  Action and the State Action.  Instead, Arrellano's Progressive paid lawyers appear to be

20  acting in Progressive and AIG's interests.  This issue has been raised in the State court

21  and is the subject of a motion to disqualify Arrellano's Progressive paid lawyers.  Decl. of

22  Joseph Di Monda, Esq.

23  **C.    Progressive's Motivation To Manipulate the Courts**

24      Progressive's scheme is to have Arrellano left with an uninsured over-limits

25  judgment in the State Action, protect itself, and secondarily to protect another insurer,

26  AIG.  Progressive knows that Arrellano has no assets and will be deported upon

27  completion of his sentence.

28      If Progressive and AIG, with Progressive's cooperation, can have Arrellano

become liable for the full amount of Tran's judgment, all Progressive then has to do is use the federal courts to obtain Arrellano's default in a bad faith case and both Progressive and AIG escape their duty to indemnify and Progressive escape its own overlimits bad faith liability.

Progressive can obtain this result in two ways. If Arrellano is still incarcerated when the State Action and all appeals are completed, Progressive can file another federal action for declaratory relief relative to its bad faith, refuse to pay for Arrellano's defense again, and obtain his default, thereby escaping over-limits liability.

Alternatively, if Arrellano is no longer incarcerated, he will be deported to Mexico and even if Tran has obtained an over-limits judgment, Tran will not be able to collect.

Tran, who is in a coma, will become ward of the State and the taxpayer will pay for his medical care, while Progressive, who is responsible for the excess judgment will escape liability, all with the help of Arrellano's Lawyers

Tran's lawyers are aware of Progressive's scheme and know that once Arrellano is released, he will be deported to Mexico. Tran's lawyers are aware that Arrellano has little assets. Tran's lawyers know that all Arrellano has to offer of substance to Tran is an assignment of his bad faith rights against Progressive to Tran. Tran has been attempting for months, albeit unsuccessfully, to obtain an assignment from Arrellano of his bad faith rights against Progressive. Decl. of Christopher E. Angelo, Esq.

Progressive also knows this and with the cooperation of Arrellano's Progressive paid lawyers, Tran has not been able to obtain Arrellano's bad faith rights against Progressive. Progressive's paid lawyers have refused to permit Arrellano to assign his bad faith rights against Progressive unless Tran is willing to agree never to execute the overlimits judgment against Arrellano. Decl. of Christopher E. Angelo. Without an assignment of Arrellano's bad faith rights, Tran has nothing.

Tran knows that if he agrees never to execute the over-limits judgment against Arrellano, Progressive will argue that there is no bad faith because Tran has waived his right to collect the over-limits judgment and agreed to accept the $15,000 liability policy.

1    Plaintiff suggests that Progressive's scheme is an abuse of the entire judicial

2 system.

3  **V.    PROGRESSIVE HAS USED ITS FEDERAL LAWYERS TO MISLEAD**

4       **THIS COURT BY OMITTING ALL DAMAGING EVIDENCE IN PAPERS**

5       **SUBMITTED TO THIS COURT**

6       "A member of the State Bar shall not seek to mislead the judge, judicial officer, or

7 jury by an artifice or false statement of fact or law.  Honesty in dealing with the courts is

8 of paramount importance, and misleading a judge is, regardless of motives, a serious

9 offense.  Counsel should not forget that they are officers of the court, and while it is their

10 duty to protect and defend the interests of their clients, the obligation is equally

11 imperative to aid the court in avoiding error and in determining the cause in accordance

12 with justice and the established rules of practice." *Williams v. Superior Court* (1996) 46

13 Cal.App.4th 320, 330.  This duty of candor also applies to the litigants.  *U.S. v. Shaffer*

14 *Equipment Co.* (1993) 11 F.3d 450.

15       Our adversary system for the resolution of disputes rests on the unshakable
        foundation that truth is the object of the system's process which is designed
16       for the purpose of dispensing justice. However, because no one has an
        exclusive insight into truth, the process depends on the adversarial
17       presentation of evidence, precedent and custom, and argument to reasoned
        conclusions-all directed with unwavering effort to what, in good faith, is
18       believed to be true on matters material to the disposition. Even the slightest
        accommodation of deceit or a lack of candor in any material respect quickly
19       erodes the validity of the process. As soon as the process falters in that
        respect, the people are then justified in abandoning support for the system
20       in favor of one where honesty is preeminent.

21 *U.S. v. Shaffer Equipment Co.* (1993) 11 F.3d 450, 457.

22       Here, Progressive had its lawyer, Ronald Funnel, submit a declaration attached to

23 its Application for Default Judgment by Court Against Arrellano which is misleading and

24 omits from the record the complete correspondence between Tran's prior attorney and

25 Progressive related to Tran's policy limit demands on Progressive.

26       Specifically, the Declaration of Ronald P. Funnel is designed to mislead this Court

27 into believing that Progressive tendered Arrellano's policy limits and that Tran's prior

28 attorney refused to accept it.  Exhibit 12 Declaration of Ronald Funnel.

The Funnel declaration only attaches a January 26, 2007, policy limit demand letter from Anh Nguyen and a February 2, 2007, letter from Progressive purporting to tender its policy limits. Exhs. 3 and 4 (attached also to the Funnel declaration). *See*, Exh. 12, the Declaration of Ronald P. Funnel, p. 3, lns. 13-17, wherein he states that Progressive tendered its policy limits.

However, the Funnel declaration omits a March 2, 2007, letter from Progressive wherein Progressive rejects Tran's policy limit demand and refuses to tender Arrellano's policy limits because of a possible property damage claim by the City of San Diego against Arrellano. Exh. 5.

The Funnel declaration also omits a March 14, 2007 letter from Anh Nguyen which puts Progressive on notice that he is rejecting Progressive's March 2, 2007 letter as a counter-offer to his policy limit demand. Exhibit 13.

Finally, the Funnel declaration also omits a March 15, 2007, letter from Progressive which is another rejection of Tran's January 26, 2007, policy limit demand. Exh. 6; Decl. of Anh Q. D. Nguyen.

The omission of these letters from the Funnel declaration was either done intentionally by Mr. Funnell, or Progressive, as part of its scheme to mislead this Court, withheld the damaging letters from its lawyers in an attempt to obtain Arrellano's default.

## VI.    THIS COURT HAS THE POWER TO IMPOSE SANCTIONS AGAINST PROGRESSIVE AND ITS ATTORNEYS

### A.    This Court May Sanction Both Progressive and Its Attorneys

Federal courts have inherent power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation or for "willful disobedience" of a court order. *Chambers v. NASCO, Inc.* (1991) 501 U.S. 32, 43.

The court's inherent power to sanction  may be imposed against the party or entity who controls the litigation and is responsible for the abusive conduct, even if not a party thereto. *Lockary v. Kayfetz* (9th Cir. 1992) 974 F.2d 1166, 1169.

Moreover, "Bad faith" conduct may be sanctioned under the court's inherent

1 powers even if it is also sanctionable under other rules, such as Rule 11 or 28 USC §

2 1927: "These other mechanisms, taken alone or together, are not substitutes for the

3 inherent power, for that power is both broader and narrower than other means of

4 imposing sanctions." *Chambers v. NASCO, Inc.*, supra, 501 U.S. at 46–48.

### B.    Progressive and Its Attorneys Acted in Bad Faith

6      Bad faith conduct was shown where an attorney seriously misled the court by

7 misquoting or omitting material portions of documentary evidence. *Lipsig v. National*

8 *Student Marketing Corp.* (DC Cir. 1980) 663 F.2d 178, 181.

9      Here, the Funnel declaration omits material portions of the documentary evidence.

10 Funnel omitted all of progressive letters contained in the Anh Q.D. Nguyen declaration

11 which indicate the Progressive rejected Trans' policy limit demand.

12      The fact that Funnel omitted this critical documentary evidence in an Application

13 to take Arrellano's default is even more despicable and indicates bad faith.

### C.    Both Progressive and its Attorneys Should be Sanctioned

15      Progressive finds no protection because its complaint was dismissed for lack of

16 jurisdiction. A frivolous complaint may be sanctionable under Rule 11 even where the

17 case is later dismissed for lack of federal jurisdiction. *Willy v. Coastal Corp.* (1992) 503

18 U.S. 131, 139; *Buster v. Greisen* (9th Cir. 1997) 104 F.3d 1186, 1190. Rule 11 is violated

19 where the claim is not warranted by existing law or a "nonfrivolous" argument for change

20 of that law. Fed. Rules of Civ. Proc. Rule 11(b)(2).

21      Here, based upon well settled law which Progressive never bothered to investigate

22 its violation of Rule 11 was shown because it was "patently clear that a claim has

23 absolutely no chance of success under the existing precedents, and ... no reasonable

24 argument can be advanced to extend, modify or reverse the law as it stands ... " *Eastway*

25 *Construction Corp. v. City of New York* (2nd Cir. 1985) 762 F.2d 243, 254.

26      Or, stated differently, the standard is violated if no "plausible, good faith argument

27 can be made by a competent attorney to the contrary." Rule 11(b)(2) establishes an

28 objective standard that is designed to eliminate any "empty-head pure-heart" justification

1   for patently frivolous arguments. *Zaldivar v. City of Los Angeles* (9th Cir. 1986) 780

2   F.2d 823, 829, 833.

3         Progressive, in its opposition to Tran's motion to dismiss, did not even bother to

4   make any arguments that the law prohibiting the use of extra-contractual damages to

5   create diversity jurisdiction should be changed or for some reason, should not be applied

6   to the facts of this case. Hence it finds no protection now in claiming it was attempting a

7   non-frivolous argument for a change in the law.

8   **VII.   REQUESTED SANCTION**

9         This Court should consider:  1) Ordering Progressive to not file another complaint

10  against Arrellano in federal court without paying for an independent attorney to represent

11  him pursuant to California Civil Code § 2860;  2) Order Progressive to pay for and retain

12  an independent attorney now to inform Arrellano of what Progressive attempted to do to

13  him, what Progressive's federal complaint means and what could have happened had

14  Progressive been successful in taking his default; 3) Order Progressive and its attorneys to

15  pay monetary sanctions to the Court for causing a waste of judicial resources and for their

16  attempt to manipulate the judicial system and for omitting documentary evidence in

17  papers submitted to the Court.

18  **VIII.  CONCLUSION**

19        For all of the above reasons, Tran requests that this Court grant his motion for

20  sanctions.

21

22  May 10, 2008

23                                        ANGELO & DI MONDA, LLP

24

25                                        _S/Joseph Di Monda_
                                          Joseph Di Monda,
                                          Attorneys for Defendant Tran

26

27

28

                              16

# DECLARATION OF JOSEPH DI MONDA, ESQ.

I, Joseph Di Monda, declare:

1.  I am over the age of 18 years, I have personal knowledge of the facts stated herein and if called as a witness I would and could competently testify as follows;

2.  I am an attorney at law duly admitted to practice before all the courts of the State of California and the U.S. District Court for the Southern District of California and the attorney of record herein for Defendant, Bun Bun Tran in support of his Motion for Sanctions against Progressive West Insurance Company and its attorneys Robbie & Matthai.

3.  Bun Tran is presently at Coronado Sharp Medical Center in a non-communicative vegetative state.

4.  I have been informed and believe that Tran's lifetime medical care costs will be in the range of $0 million dollars.

5.  In this federal action, Progressive used substituted service on Tran by serving his guardian ad litem's neighbor.

6.  I spoke to Randy Winet of Winet, Patrick & Weaver, Arrellano's Progressive paid lawyers int eh State Action.  Mr. Winet told me that Progressive refused to pay for Arrellano's defense in this federal action.

7.  Angelo & Di Monda has filed a motion in the San Diego Superior Court to disqualify the law firm of Winet, Patrick & Weaver as Arrellano's counsel in the State Action.

8.  Exhibit 1, attached hereto is a true and correct copy of Arrellano's Arrest Report from the November 18, 2006 accident with Tran.

9.  Exhibit 2, attached hereto is a true and correct copy of the San Diego Superior Court Complaint for damages against Arrellano et al.

10.  Exhibit 3, attached hereto is a true and correct copy of a January 26, 2007 letter from Tran's prior counsel, Anh Q.D. Nguyen to Progressive demanding Arrellano's Policy limits.  Said letter is attached to the Declaration of Anh Q.D. Nguyen.

11.  Exhibit 4, attached hereto is a true and correct copy of a February 2, 2007 letter from Progressive to Anh Q.D. Nguyen purporting to be an acceptance of Tran's demands for Arrellano's policy limits.  Said letter is attached to the Declaration of Anh Q.D. Nguyen.

12.  Exhibit 5, attached hereto is a true and correct copy of a March 2, 2007 letter from Progressive to Anh Q.D. Nguyen rejecting Tran's policy limit demand.  Said letter is attached to the Declaration of Anh Q.D. Nguyen.

13.  Exhibit 6, attached hereto is a true and correct copy of a March 15, 2007 letter from Progressive to Anh Q.D. Nguyen rejecting Tran's policy limit demand.  Said letter is attached to the Declaration of Anh Q.D. Nguyen.

14.  Exhibit 7, attached hereto is a true and correct copy of the Proof of Service of the Federal Complaint on Tran's guardian ad litem, showing substituted service on a Julia Abastillas, co-tenant.

15.  Exhibit 8, attached hereto is a true and correct copy of a May 7, 2008 letter from the law firm of Winet, Patrick & Weaver stating that Progressive refused to pay for Arrellano's defense in this Federal Action.

16.  Exhibit 9, attached hereto is a true and correct copy of a November 28, 2007 letter from Angelo & Di Monda, LLP, wherein Christopher E. Angelo offers to obtain independent legal counsel for Arrellano.

17.  Exhibit 10, attached hereto is a true and correct copy of a November 30, 2007 letter from Randy Winet instructing Angelo & Di Monda, or anyone else, to not contact Arrellano for any reason.

18.  Exhibit 11, attached hereto is a true and correct copy of a April 18, 2008 letter from Randy Winet wherein Mr. Winet states that his law firm also represents AIG

1    Insurance Company.

2    19.   Exhibit 12, attached hereto is a true and correct copy of the Ronald P. Funnel

3          declaration submitted to this Court in support of Progressive's Application for

4          default judgment against Arrellano, wherein Mr. Funnel provides this Court with

5          only part of the documentary evidence related to Tran's policy limit demand on

6          Progressive and Progressive's response.

7    20.   Exhibit 13, attached hereto is a true and correct copy of a March 14, 2007 letter

8          from Anh Q.D. Nguyen to Progressive.  Said letter is attached to the Declaration of

9          Anh Q.D. Nguyen.

10   21.   Exhibit 1, attached to Tran's Requests for Judicial Notice is a true and correct copy

11         Tran's Motion to Dismiss for Lack of Federal Jurisdiction.

12   22.   Exhibit 2, attached to Tran's Requests for Judicial Notice is a true and correct copy

13         Progressive's Opposition to Tran's Motion to Dismiss.

14   23.   Exhibit 3, attached to Tran's Requests for Judicial Notice is a true and correct copy

15         of this Court's January 7, 2008 Order vacating oral arguments on Tran's Motion to

16         Dismiss.

17   24.   Exhibit 4, attached to Tran's Requests for Judicial Notice is a true and correct copy

18         of Progressive's Request to Enter Default against Arrellano in the Federal Action.

19   25.   Exhibit 5, attached to Tran's Requests for Judicial Notice is a true and correct copy

20         of Tran's Motion to Set Aside Arrellano's Default.

21   26.   Exhibit 6 attached to Tran's Requests for Judicial Notice is a true and correct copy

22         the Clerk of the U.S. District Court's Default against Arrellano.

23   27.   Exhibit 7, attached to Tran's Requests for Judicial Notice is a true and correct copy

24         of Progressive Application for Default Judgment Against Arrellano.

25   28.   Exhibit 8, attached to Tran's Requests for Judicial Notice is a true and correct copy

26         of this Court's Order dismissing Progressive's Federal Action for lack of diversity

27         jurisdiction.

28   ///

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3

4    May 12, 2008

5

6                                                  S/Joseph Di Monda
                                                    Joseph Di Monda
7                                                Attorneys for Bun Bun Tran

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHRISTOPHER E. ANGELO, ESQ.

I, Christopher E. Angelo, declare:

1.   I am over the age of 18 years, I have personal knowledge of the facts stated herein and if called as a witness I would and could competently testify as follows.

2.   I am an attorney at law duly admitted to practice before all the courts of the State of California and the U.S. District Court for the Southern District of California and the attorney of record herein for Defendant, Bun Bun Tran in support of his Motion for Sanctions against Progressive West Insurance Company and its attorneys Robbie & Matthai

3.   Leonel Arrellano was arrested and pled guilty to various felonies arising out of the November 18, 2006 accident with Bun tran.

4.   Leonel Arrellano is presently incarcerated at the Sierra Conservation Center and serving a 6 year term.

5.   Arrellano is an indigent illegal alien who does not speak, read or understand English.

6.   Arrellano will be deported to Mexico upon his release from prison.

7.   Arrellano's attorneys in the State personal injury lawsuit, Winet, Patrick & Weaver are being paid by Progressive and know Arrellano is incarcerated.

8.   The federal summons and complaint in this action was not personally served upon the guardian ad litem but was served suing substituted service on a neighbor of the guardian ad litem who is not a family member nor authorized to accept service on behalf of Tran's guardian ad litem.

9.   Progressive knows I represent defendant Tran but made no attempt to contact me about the federal lawsuit.

10.   I have been attempting to obtain an assignment of Arrellano's bad faith action against Progressive but his State Action lawyers, Winet, Patrick & Weaver will not cooperate in having Arrellano assign his bad faith rights to Tran.  Instead, Winet, Patrick & Weaver claim that Progressive must agree to any assignment of

21

1   Arrellnao's bad faith rights to Tran.

2   11.   The firm of Winet, Patrick & Weaver wants Tran to promise never to execute the

3         overlimits judgment on against Arrellano, but Progressive refuses to agree that it

4         never argue in any subsequent bad faith lawsuit that this covenant invalidates the

5         ability of its insured to make an assignmet to Tran.

6   12.   If Tran agrees to those terms, Progressive will argue that there is no bad faith

7         because tran waived his right to collect any over-limit judgment.

8   13.   Arrellano has little to offer of substance to Tran except for his bad faith rights.

9   14.   In the past I asked Randy Winet to allow independent personal counsel to advise

10        Arrellano related to the federal lawsuit.  I even recommended an attorney by name

11        who speaks Spanish.

12  15.   The law firm of Winet, Patrick & Weaver threatened me with State Bar action if I

13        made any attempt to obtain independent counsel for Arrellano to defend himself

14        for any reason at any time.

15  16.   Winet, Patrick & Weaver claimed that only they could contact Arrellano because

16        they were representing him.  However, they did not represent him in the Federal

17        Action.

18  17.   Whenever I propounded discovery against Arrellano, his lawyers, Winet, Patrick &

19        Weaver, would ask for time extensions to answer because they claimed difficulty

20        in contacting him.

21  18.   I was therefore surprised at how quickly Arrellano was able to respond to Chili's

22        Requests for Admissions.

23        I declare under penalty of perjury under the laws of the State of California that the

24  foregoing is true and correct.

25  May 12, 2008

26

27                                    S/Christopher E. Angelo
                                      Christopher E. Angelo
28                                    Attorneys for Bun Bun Tran