JAMES R. ROBIE, SBN 67303
KYLE KVETON, SBN 110805
RONALD P. FUNNELL, SBN 209897
ROBIE & MATTHAI
A Professional Corporation
500 South Grand Avenue, 15th Floor
Los Angeles, California 90071
(213) 706-8000 • (213) 624-2563 Fax
kkveton@romalaw.com

Attorneys for Plaintiff PROGRESSIVE WEST INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PROGRESSIVE WEST INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BUN BUN TRAN, LEONEL ARRELLANO,<br><br>Defendants. | **CASE NO. 07 - CV 1999 JAH (POR)**<br><br>**NOTICE OF MOTION; MOTION FOR RECONSIDERATION; DECLARATION OF RONALD P. FUNNELL**<br><br>Date: July 14, 2008<br>Time: 2:30 p.m.<br>Ctrm: 11<br>940 Front Street<br>San Diego, CA 9210 |

**TO DEFENDANT'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 14, 2008, at 2:30 p.m. or as soon thereafter as this matter may be considered by the above entitled Court, located at 940 Front Street, San Diego, California, Plaintiff Progressive West Insurance Company ("Progressive") will move the Court to reconsider its dismissal of this case. (Doc. 15).

This motion is brought on the grounds that newly discovered evidence demonstrates that reconsideration of the dismissal of this matter is warranted pursuant to FRCP 60(b)(2).

/ / /

/ / /

/ / /

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the declaration of Ronald P. Funnell, the pleadings and papers on file with this Court, and upon other matters as may be presented to the Court at the time of the hearing.

DATED: May 29, 2008

ROBIE & MATTHAI
A Professional Corporation

By: ______________________________
JAMES R. ROBIE
KYLE KVETON
RONALD P. FUNNELL
Attorneys for Plaintiff PROGRESSIVE WEST INSURANCE COMPANY

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Progressive West Insurance Company ("Progressive") seeks reconsideration of this Court's April 29, 2008 Order granting defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and subsequent dismissal. Newly discovered evidence[1] developed since the Motion to Dismiss was briefed establishes that the amount in controversy is in excess of the $75,000 jurisdictional minimum.

More specifically, Tran's subsequent pleadings in this action establish that Tran's position is that the amount in controversy in this lawsuit is $40 million. Moreover, Progressive has learned that its insured Arrellano has proposed a covenant not to execute on any judgment that Tran may obtain against Progressive's insured in the underlying auto accident case, as well as an assignment to Tran of Arrellano's bad faith rights against Progressive.

Combined, this newly discovered evidence demonstrates with a high degree of certainty that defendant Tran and/or Arrellano intends to pursue a bad faith action against Progressive. Progressive could not have discovered this evidence prior to filing its Opposition to defendant's motion to dismiss, as the evidence did not exist as of December 27, 2007.

Based on this newly discovered evidence, this Court should reconsider its earlier order dismissing this case for lack of subject matter jurisdiction. The newly discovered evidence demonstrates a strong likelihood that Progressive will be sued for bad faith failure to settle the underlying action for policy limits. Its financial exposure in the likely event it is sued is far in excess of the $75,000 amount in controversy requirement. Thus, this declaratory relief action more than satisfies the minimum amount in controversy for subject matter jurisdiction.

/ / /

[1] By "newly discovered" evidence, plaintiff refers to evidence developed since its Opposition to Tran's Motion to Dismiss was filed on December 27, 2007.

## STATEMENT OF NEWLY DISCOVERED FACTS

The evidence previously submitted in this case already suggests a high probability that defendants will obtain a significant judgment against Progressive's insured, Arrellano, far in excess of the $15,000 policy limit.[2] With the addition of newly discovered evidence, there is little doubt that defendant Tran and/or Arrellano will sue Progressive for breach of contract and bad faith, alleging a failure to settle the claim against Arrellano within policy limits.

On March 31, 2008, Progressive received a copy of a letter of the same date from Arrellano's attorney in the underlying action, Randall Winet, to Tran's attorney, Christopher Angelo. The letter discussed a prospective bad faith lawsuit against Progressive and Arrellano's willingness to assign his bad faith rights. **Exh. 1**. Attached to the letter was a proposed Covenant not to Execute or Enforce Judgment. The Covenant includes an assignment of Arrellano's breach of contract and bad faith rights against Progressive. In exchange, Tran's attorneys agreed not to execute on any judgment against Arrellano in excess of the $15,000 policy limit arising from the personal injury case, in which defendant Tran sustained catastrophic injuries. **Exh. 1**, Covenant Agreement at ¶¶ 1,2. In that same letter, Winet stated Arrellano was prepared to sign the covenant. *Id.*

The language of the Covenant provides ample evidence of an intent to pursue a bad faith action against Progressive. Indeed, it highlights defendant's position regarding Progressive's so-called bad faith failure to settle the case within policy limits, thus allegedly exposing itself to excess liability in a bad faith action.

> "C. Certain issues have been raised pertaining to the alleged failure to settle all of Promisor's (Tran) bodily injury claims against Promisee (Arrellano) on the part of Progressive . . .

---

[2] Tran is in a comatose state as a result of injuries he sustained in the automobile accident with Defendant Arrellano. There is no indication that his condition will change. Due to the extent of Mr. Tran's injuries, and that there is no question as to Arrellano's liability, it is not speculative to assume that the award or settlement in that case will exceed $75,000.

> D. *It is contended that Progressive breached the implied covenant of good faith and fair dealing and/or otherwise acted negligently or tortiously toward Promisor and/or Promisee and as a direct result, Promisee is now exposed to an adverse judgment . . . in excess of Promisee's liability insurance policy limits.*" **(Exh. 1**, Covenant Recitals at ¶¶ C, D [emphasis added].)

Further, on April 28, 2008 – one day after this Court filed its order dismissing Progressive's declaratory relief action for lack of subject matter jurisdiction – defendant Tran's attorney filed a declaration in support of Tran's motion to set aside the default against Arrellano in this case. In that declaration, defendants' attorney confirmed that he had been negotiating an assignment of Arrellano's bad faith rights against Progressive. Doc. 13, Angelo Decl. at ¶ 5; see also Doc. 13 at 3 ("The damages caused by Arrellano will exceed $40 million dollars. ... It is Tran's position that Progressive is now responsible to indemnify Arrellano for an unlimited amount of potential damages due to Progressive's failure to settle for Arrellano's policy limits").

Neither the Covenant proposed by Arrellano, nor Tran's Motion and attorney's declaration were available to Progressive when it filed its opposition to the motion to dismiss on December 27, 2007. Doc. 6. Progressive simply had no way of knowing the contents of the yet-to-be produced Covenant, until it first received it as an attachment to the March 31, 2008 letter. Funnell Decl. ¶ 3. Nor could Progressive have been aware of defendants' attorney's declaration, as it was not even filed and served until *after* this Court filed its order dismissing Progressive's declaratory relief action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## LEGAL ARGUMENT

**RECONSIDERATION IS JUSTIFIED BECAUSE NEWLY DISCOVERED EVIDENCE DEMONSTRATES THIS COURT CAN EXERCISE SUBJECT MATTER JURISDICTION OVER PROGRESSIVE'S DECLARATORY RELIEF ACTION**.

**A. Recently Discovered Evidence Confirms Defendants Intend to File a Bad Faith Action Against Progressive, Thus Making the Amount of Progressive's Potential Liability Far in Excess of $75,000.**

"On motion and upon terms that are just, the court may relieve a party ...from a final judgment, order, or proceeding for the following reasons ... (2) newly discovered evidence which by due diligence could not have been discovered [previously]." Fed. R. Civ. P. § 60(b)(2). Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b)(2); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case. *Feature Realty, Inc. v. City of Spokane,* 331 F.3d 1082, 1093 (9th Cir. 2003); *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987).

Here, Progressive was neither aware of, nor did it receive, the letter from Arrellano's attorney to Tran's attorney including the proposed covenant not to execute and assignment of bad faith rights until March 31, 2008 – the day it was written. **Exh. 1**. Thus, not until March 31, 2008 – *more than three months after Progressive filed its opposition to defendants' motion to dismiss* – did Progressive first become aware of this piece of evidence regarding the negotiations for the assignment of rights, Arrellano's willingness to assign those rights, and Tran's intent to file a bad faith action against Progressive for its alleged failure to settle the underlying action for policy limits. **Doc. 6**. Until that date, Progressive and its attorneys had no way of confirming defendant Tran's intent to a bad faith lawsuit against Progressive. That intent, however, is now clear.

Certainly, had Progressive been privy to this evidence at the time it filed its opposition to defendants' motion to dismiss, it would have relied upon it to demonstrate defendant's intent to file a bad faith action against Progressive. The letter and accompanying covenant not to execute no doubt lay the foundation for defendants' impending bad faith action against Progressive. The only conceivable purpose of the covenant is to obtain Arrellano's bad faith rights, and to enforce those rights against Progressive in a separate lawsuit. Not only does the covenant specifically assign to Tran the rights to any bad faith action by Arrellano, but Tran agrees to forgo execution on any judgment against Arrellano resulting from Tran's bodily injury claims against him. **Exh. 1,** Covenant Agreement at ¶¶ 1,2. It is difficult to imagine that defendant would give up his right to execute on any judgment against Arrellano, unless defendant intended to bring a bad faith claim against Progressive. Tran suffered catastrophic injuries as a result of Arrellano's negligence. Agreeing not to execute on any judgment against Arrellano (without also the right and intent to proceed with a bad faith action against Progressive) would be giving up the right to an excess verdict which Tran alleges to be worth $40 million. There is no basis in logic to suggest that Tran would give up that right, unless of course, his intent was to obtain it from Progressive.[3] That intent is confirmed in Tran's Amended Motion to Set Aside Default. Doc. 13 at 3, 7 and Angelo Decl. at ¶ 5.

This newly discovered evidence demonstrates that it is not just likely that defendants will file a bad faith action against Progressive, it is a virtual certainty. Therefore, Progressive respectfully requests that this Court's reconsider its previous ruling dismissing Progressive's declaratory relief action for lack of subject matter jurisdiction. As shown below, given the impending bad faith action, Progressive has more than satisfied the minimum amount in controversy requirement.

---

[3] In fact, the covenant specifically provides that "Progressive breached the implied covenant of good faith and fair dealing and/or otherwise acted negligently or tortiously toward [Defendants]." (**Exh. 1,** Covenant Recitals at ¶ D). Undoubtably, these same words will appear as allegations in the impending bad faith complaint against Progressive.

**B. The Amount in Controversy Exceeds $75,000.**

"For jurisdictional purposes in actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation or the value of the right to be protected." *Energy Catering Servs. v. Burrows*, 911 F.Supp. 221, 223 (E.D. La. 1995). The insurer in *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002), sued its insured for declaratory relief that its liability insurance policy did not cover environmental pollution claims against the insured by third parties. *Id.* The policy had $1 million liability limits, but the third parties' claims were less than $75,000. *Id.* The Court held that the jurisdictional amount in controversy was the value of the claims presently asserted against the insured, *not* the face amount of the policy. *Id.* "[I]n declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in controversy is measured by the value of the underlying claim – not the face amount of the policy." *Id.* at 911.

Moreover, in determining the amount in controversy for purposes of subject matter jurisdiction, courts may consider future lawsuits, not just those that are pending. In *Allstate Insurance Company v. Hilbun*, the court held it could consider the defendant's "promised bad faith lawsuit" in determining the amount in controversy for purposes of subject matter jurisdiction. *Allstate Insurance Company v. Hilbun*, 692 F.Supp. 698, 700-701 (S.D. Miss. 1988). There, Allstate filed a declaratory relief action in which it sought an adjudication of its obligation to pay uninsured motorist benefits. *Id.* The insured threatened, but had not yet filed, a bad faith action for Allstate's alleged failure to pay those benefits. *Id.* The court held that in determining the amount in controversy, it could consider not only the amount at issue in the underlying action, but also the "promised" bad faith claim, even though it had not yet been filed. *Id.*; see also *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F. 3d 1471, 1474, n. 2 (9th Cir. 1997) [court may consider "potential liability" in determining amount in controversy]; *The Prudential Ins. Co. v. Thomason*, 865 F. Supp. 762, 765 (C.D. Utah 1994) [court may consider possible "future claims" between insurer and insured in evaluating amount in controversy]; *State*

*Farm Fire & Cas. Co. v. Carnnahan*, 2008 U.S. Dist. LEXIS 4922 (W.D. MO 2008) [declaratory relief action in which liability for full amount of judgment without regard to policy limits claimed is sufficient to meet jurisdictional limit, because potential judgment in excess of minimum amount in controversy requirement].

Here, this Court can (and should) consider defendants' "promised" bad faith action, particularly given that an assignment of rights may soon be obtained. Not only are the damages at issue in the underlying personal injury action far in excess of the $75,000 threshold necessary for subject matter jurisdiction, the evidence confirms defendants will likely bring a bad faith action against Progressive. Defendants seek in excess of $75,000 in damages from Arrellano in the underlying action. **Doc. 5; Doc. 13.** Given defendant's claim that Progressive is not shielded by its policy limit, this amount alone satisfies the $75,000 jurisdictional requirement, *without* considering other damages recoverable in a bad faith action, such as damages for emotional distress, attorneys fees and punitive damages.[4] As the *Hartford* court confirmed, it is the value of defendants' underlying claim against Arrellano that governs the amount in controversy, *not* Progressive's $15,000 policy limit. See Doc. 13 at 3 ("The damages caused by Arrellano will exceed $40 million dollars. ... It is Tran's position that Progressive is now responsible to indemnify Arrellano for an unlimited amount of potential damages due to Progressive's failure to settle for Arrellano's policy limits").

Moreover, the newly discovered evidence establishes a high probability that there will be a bad faith claim against Progressive. It is not unreasonable to project that if Tran is successful in his imminent bad faith lawsuit against Progressive, the award would exceed $75,000, especially given Tran's allegation of damages exceeding $40 million. A survey of California jury verdicts in auto accident cases involving the bad faith failure to accept a reasonable demand within the insured's policy limits demonstrates that

[4] As discussed above, Tran is in a comatose state and there is no indication that his condition will change. Given the extent of Tran's injuries and Arrellano's likely liability for those injuries, it is not speculative to assume the judgment in that case will exceed $75,000.

damages in Tran's promised bad faith lawsuit, if successful, could exceed the jurisdictional minimum.[5]  *See, e.g,. Duin v. Allstate Insurance Company* 1997 U.S. Dist. LEXIS 20882, *3-*6 (S.D. Cal. 1992) (burden of satisfying amount in controversy met where court was provided with evidence that similar bad faith claims "overwhelmingly result in verdicts well over the jurisdictional amount" and insured did not represent that it would seek less than the jurisdictional amount):

- *Chastain vs. Leader Insurance* (Tulare County, March 8, 2005): $670,000 judgment for failure to accept $15,000 policy limits demand.  (**Exh. 2**.)

- *Thomas vs. Workmen's Auto Insurance Company* (Los Angeles County, December 23, 2002): $350,000 judgment for failure to accept $15,000 policy limits demand.  (**Exh. 3**.)

- *Zimmerman vs. Farmers Insurance Exchange* (Los Angeles County, September 7, 1999): $850,000 settlement for failure to accept $15,000 policy limits demand.  (**Exh. 4**.)

- *Monzano vs. Farmers Insurance Exchange* (Los Angeles County, April, 1992): $16,475,000 verdict for failure to accept $15,000 policy limits demand.  (**Exh. 5**.)

- *Knighten vs. Interinsurance Exchange of the Automobile Club of Southern California* (Orange County, June 8, 1992): $1,300,000 recovery for failure to accept $200,000 policy limits demand.  (**Exh. 6**.)

- *Lehto vs. Allstate Insurance Company* (Los Angeles County, August 30, 1991): $3,500,000 verdict for failure to accept $50,000 policy limits demand.  (**Exh. 7**.)

- *Quill vs. State Farm Mutual Automobile Insurance Company* (Orange County, May 16, 1990): $1,350,000 verdict for failure to accept policy limits demand.  (**Exh. 8**.)

- *Khodabandeh vs. American International Underwriter's Insurance Co.* (Los Angeles County, June 28, 1990): $1,207,201.83 verdict for failure to accept $300,000 policy limits demand.  (**Exh. 9**.)

- *Brooks vs. Mercury Casualty Co.* (Orange County, March 4, 1988): $320,000 verdict for failure to accept $15,000 policy limits demand.  (**Exh. 10**.)

---

[5]  Progressive does not contend that its conduct in handling Arrellano's claim exposed it to liability in the amounts suggested by the above verdicts.  The verdicts simply demonstrate that for purposes of alleging subject matter jurisdiction, plaintiff has met the amount in controversy requirement.

- *Gourley vs. State Farm Mutual Insurance Company* (Orange County, March 2, 1988): $1,592,265 verdict for failure to accept $100,000 policy limits demand. (**Exh. 11**.)

Thus, even though defendant has yet to file his bad faith lawsuit against Progressive stemming from its alleged failure to settle within policy limits, the proposed covenant and assignment of rights, and Tran's counsel's declaration confirming the intent to file that bad faith action, strongly support the conclusion that a bad faith action is imminent. That it has yet to be filed is immaterial; like the insurer in *Hilburn*, Progressive is entitled to rely on the "promised" bad faith action for purposes of subject matter jurisdiction.

In short, as demonstrated above, the amount in controversy far exceeds the $75,000 threshold required for this Court to exercise subject matter jurisdiction.

**CONCLUSION**

As shown above, Progressive has more than met the $75,000 minimum amount in controversy for purposes of subject matter jurisdiction. Thus, Progressive respectfully requests that this Court reconsider its dismissal of this case.

DATED: May 29, 2008

ROBIE & MATTHAI
A Professional Corporation

By: ____________________________

JAMES R. ROBIE
KYLE KVETON
RONALD P. FUNNELL
Attorneys for Plaintiff PROGRESSIVE WEST INSURANCE COMPANY

**DECLARATION OF RONALD P. FUNNELL**

I, Ronald P. Funnell, declare as follows:

1. I am over 18 years old and am an attorney licensed to practice law in the state of California and am an associate with the law firm of Robie and Matthai, attorneys representing Plaintiff Progressive West Insurance Company in this case. The facts stated in this declaration are from my own personal knowledge and I would and could testify competently to these facts if called to do so.

2. On or about March 31, 2008, Plaintiff Progressive received the March 31, 2008 letter from Attorney Winet to Attorney Angelo and the attached Covenant Not To Execute indicating Defendant Tran's intentions to file a bad faith action against Progressive. A true and correct copy of the March 31, 2008 letter and Covenant is attached as **Exhibit 1**.

3. Plaintiff had no way of previously discovering this letter or the attached Covenant Not To Execute prior to filing its Opposition to the Motion to Dismiss on December 27, 2007.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of May 2008, at Los Angeles, California.

________________________________
RONALD P. FUNNELL

**PROOF OF SERVICE**

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 500 South Grand Avenue, 15th Floor, Los Angeles, CA 90071-2609.

On May 29, 2008, I served the foregoing document(s) described as:

**NOTICE OF MOTION; MOTION FOR RECONSIDERATION; DECLARATION OF RONALD P. FUNNELL**

on all interested parties in this action by placing a true copy of each document, enclosed in a sealed envelope addressed as follows:

***Attorneys for Defendant, Bun Bun Tran:***
Christoper E. Angelo, Esq.
Joseph Di Monda, Esq.
ANGELO & DI MONDA LLP
1721 No. Sepulveda Boulevard
Manhattan Beach, CA 90266-5014
Telephone: (310) 939-0099
Facsimile: (310) 939-0023

***Defendant Leonel Arrellano, In Pro Per:***
Leonel Arrellano, Inmate #F77654
c/o Division of Adult Operations
Sierra Conservation Center
5100 O'Byrnes Ferry Road
Jamestown, CA 95327

( ) **BY MAIL:** as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

( ) **BY PERSONAL SERVICE:** I delivered such envelope by hand to the above addressee(s).

( ) **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to an overnight courier service (Federal Express), for delivery to the above addressee(s).

( ) **BY FACSIMILE TRANSMISSION:** I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the above facsimile number.

(X) **BY E-SERVICE:** I caused the above-referenced document(s) to be electronically served on all counsel of record through the Court's CM/ECF filing and service system.

**(X) (Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 29, 2008, at Los Angeles, California.

______________________________
Windy Gale Tyler