1  JAMES R. ROBIE, SBN 67303
   KYLE KVETON, SBN 110805
2  RONALD P. FUNNELL, SBN 209897
   ROBIE & MATTHAI
3  A Professional Corporation
   500 South Grand Avenue, 15th Floor
4  Los Angeles, California 90071
   (213) 706-8000 • (213) 624-2563 Fax
5  kkveton@romalaw.com

6  Attorneys for Plaintiff PROGRESSIVE WEST
    INSURANCE COMPANY
7

8
                 UNITED STATES DISTRICT COURT
9
                SOUTHERN DISTRICT OF CALIFORNIA
10

11 PROGRESSIVE WEST INSURANCE )    CASE NO. 07 - CV 1999 JAH (POR)
   COMPANY, an Ohio corporation, )
12                               )
                  Plaintiff,     )    OPPOSITION TO MOTION FOR
13          vs.                  )    SANCTIONS AGAINST PLAINTIFF
                                 )    PROGRESSIVE WEST INS. CO.
14 BUN BUN TRAN, LEONEL          )    AND ITS ATTORNEYS ROBIE &
   ARRELLANO,                    )    MATTHAI; DECLARATION OF
15                               )    RONALD P. FUNNELL
                  Defendants.    )
16 _____ )   Date:      June 16, 2008
                                      Time:      2:30 p.m.
17                                    Ctrm:      11
                                                 940 Front Street
18                                               San Diego, CA 92101

19

20

21      Plaintiff Progressive West Insurance Company ("Progressive") submits the

22 following Opposition to Defendant Bun Bun Tran's Motion for Sanctions Against

23 Plaintiff Progressive Ins. Co. and its Attorneys Robie & Matthai:

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

# TABLE OF CONTENTS

2

*Page*

3    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4    SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5    LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6        1.    The Legal Standard Governing Tran's Motion. . . . . . . . . . . . . . . . . . . 8

7        2.    Progressive's Complaint for Declaratory Relief Was Warranted by

8             Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9        3.    Progressive's Application for Default Judgment Was Not
         "Misleading." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10        4.    There Is No Evidence Supporting Tran's Speculative Claims of
         "Improper Purpose," Much Less the Required Clear and

11             Convincing Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

12    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SANCTIONS          07 - CV 1999 JAH (POR)

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Allstate Insurance Company v. Hilbun*, 692 F.Supp. 698
(S.D. Miss. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115
(1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F. 3d 1471
(9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32
(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191
(3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319
(7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Energy Catering Servs. v. Burrows*, 911 F.Supp. 221
(E.D. La. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479
(3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 15

*Geddes v. United Financial Group*, 559 F.2d 557
(9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung, GmbH*, 977 F.2d 809
(3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531
(9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155
(2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908
(5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hudson v. Moore Business Forms Inc.*, 827 F.2d 450
(9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hutchinson v. Pfeil*, 208 F.3d 1180
(10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Primus Financial Services, Inc. v. Batarse* 115 F.3d 644 . . . . . . . . . . . . . . . . . . . . . 9

1
*Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772
2   (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3
*Riverhead Sav. Bank v. National Mortg. Equity Corp.*, 893 F.2d 1109
    (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13
4
*Shepherd v. ABC*, 62 F.3d 1469
5   (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6
*State Farm Fire & Cas. Co. v. Carnahan*, 2008 U.S. Dist. LEXIS 4922
    (W.D. MO 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
7
*TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915
8   (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9
*The Prudential Ins. Co. v. Thomason*, 865 F. Supp. 762
    (C.D. Utah 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
10
*Woodrum v. Woodward County, OK*, 866 F.2d 1121
11  (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12  STATE CASES

13  *Tran v. Arrellano, et al.* San Diego Superior Court
14      Case No. 37-2007-00065432-CU-PA-CTL . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15  STATUTES

16  FRCP 11(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17  MISCELLANEOUS
18
19  S.D. Cal. Local Rule 55.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SANCTIONS                    07 - CV 1999 JAH (POR)

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The instant motion is gamesmanship.  On April 28, 2008, this Court issued its Order Granting Defendant's Motion to Dismiss on the basis that the Court was "unconvinced that inclusion of potential liability based on a possible future lawsuit that may or may not be filed by Tran's counsel is an appropriate measure of the amount in controversy."  Progressive's opposition to the motion to dismiss cited case law supporting its position that the amount in controversy requirement may be satisfied by considering (1) the potential liability of a future lawsuit, and (2) the amount of such potential liability.

It is true that the Court was not persuaded by Progressive's authority, but the legal authority exists and was presented.  The Court *did not find* that the declaratory relief action lacked merit, was frivolous or warranted sanctions.  Rather, the Court dismissed the complaint without prejudice.  The Court thus seemed to find that the action was *premature* on the facts then before the Court, not that the action lacked merit.

Within two weeks of the Order, defendant's attorneys filed this motion for sanctions under the inherent power of the Court and Rule 11.  Rather than present this Court with the clear and convincing evidence he is required to produce on a motion for inherent power sanctions, Tran resorts to speculation and innuendo in an attempt to convince this Court that two insurers, two law firms and a restaurant company have all engaged in an elaborate (albeit fictional) scheme designed to manipulate state and federal courts and thereby allow Progressive to avoid bad faith liability.  There is no evidence of a scheme to manipulate the state and/or federal courts.

Contrary to Tran's contentions, the filing of the declaratory relief complaint and the application for default judgment are not indicative of any bad faith conduct warranting the imposition of inherent power sanctions.  They are permissible exercises of Progressive's legal rights.  First, Progressive's Complaint for declaratory

1    relief was warranted by existing law and was not filed for any improper purpose.

2    Second, contrary to Tran's outrageous accusations, the inclusion of "damaging

3    evidence" to show liability is unnecessary and inappropriate in the context of an

4    application for default judgment, particularly because a defaulting party's liability has

5    already been conclusively established by the clerk's entry of default.

6        Litigants misuse the court's power when sanctions are sought against a party or

7    counsel whose only "sin" was being on the unsuccessful side of a ruling or judgment.

8    This Court should deny the motion for sanctions in its entirety.

9                        **SUMMARY OF FACTS**

10       On April 28, 2008, this Court issued its Order Granting Defendant's Motion to

11   Dismiss, and dismissed Progressive's complaint without prejudice on the basis that

12   the amount in controversy requirement was not met. (Doc. 14.)  Notably, after Tran's

13   counsel had repeatedly represented to the Court in the Motion to Dismiss that the

14   amount in controversy could not exceed $75,000, Tran claimed in a subsequent

15   Motion to Set Aside Default Judgment that Tran's claims against Progressive will

16   exceed $40 million.  Doc. 13 at 3 ["The damages caused by Arrellano will exceed $40

17   million dollars. ... It is Tran's position that Progressive is now responsible to

18   indemnify Arrellano for an unlimited amount of potential damages due to

19   Progressive's failure to settle for Arrellano's policy limits"]).

20       Since Progressive briefed its Opposition to the Motion to Dismiss on

21   December 27, 2007, counsel for Progressive's insured Leonel Arrellano has indicated

22   that Mr. Arrellano is willing to assign his bad faith rights to Tran.  On March 31,

23   2008, Progressive received a copy of a letter of the same date from Arrellano's

24   attorney in the underlying action, Randall Winet, to Tran's attorney, Christopher

25   Angelo.  The letter discussed a prospective bad faith lawsuit against Progressive and

26   Arrellano's willingness to assign his bad faith rights.  **Exh. 2**.  Attached to the letter

27   was a proposed Covenant not to Execute or Enforce Judgment.  The proposed

28   Covenant includes an assignment of Arrellano's breach of contract and bad faith

rights against Progressive.  In exchange, Tran's attorneys would agree not to execute on any judgment against Arrellano in excess of the $15,000 policy limit arising from the personal injury case, in which defendant Tran sustained catastrophic injuries. **Exh. 2**, Covenant Agreement at ¶¶ 1,2.  In that same letter, Winet stated Arrellano was prepared to sign the covenant.  *Id.*  Further, in a declaration filed with Tran's Motion to Set Aside Default, Tran's attorney confirmed that he had been negotiating an assignment of Arrellano's bad faith rights against Progressive.  Doc. 13, Angelo Decl. at ¶ 5.

Regarding the far-fetched conspiracy claim, Tran alleges, based on nothing more than speculation and innuendo, that insurers Progressive and A.I.G. Insurance, law firms Robie & Matthai and Winet, Patrick & Weaver, and restaurant corporation Chili's all took concerted action in two different lawsuits (the underlying state personal injury action and this federal action) in a course of conduct designed to "manipulate" the federal and state courts.  (Motion at 7-12.)   However, the evidence is that no such improper "scheme" exists; it is an invention of Tran's counsel.  The evidence submitted by Tran certainly does not support the existence of an improper scheme.  A November 30, 2007 letter from Randall Winet of Winet, Patrick & Weaver to Tran's counsel makes clear that (1) Progressive did not consult with Winet, Patrick & Weaver in filing its federal declaratory relief action and (2) Winet, Patrick & Weaver did not assist Progressive in filing the declaratory relief action. (Motion, Exh. 10.)  In an April 18, 2008 letter, Mr. Winet also denied that any decisions in the underlying case were based on any pre-existing or ongoing business relationship with A.I.G. Insurance.  (Motion, Exh. 11.)

Additionally, the law firm Robie & Matthai did not consult with or advise Winet, Patrick & Weaver, A.I.G. Insurance or Chili's in its filing and prosecution of this federal declaratory relief action.  (Funnell Decl., ¶ 5.)  Progressive's attorneys certainly did not engage in any bad faith "scheme" to manipulate the federal or state

/ / /

1    court systems.  (Funnell Decl., ¶ 6.)[1]

2                        **LEGAL DISCUSSION**

3    **1.    The Legal Standard Governing Tran's Motion.**

4            While Tran's motion requests an award of sanctions under Rule 11 (See

5    Motion, p. 15) and the inherent power of the court, Tran has failed to comply with the

6    procedural requirements of Rule 11's "safe harbor" provision.  (FRCP 11(c)(2).)

7    Pursuant to Rule 11(c)(2), a motion for sanctions may not be filed until 21 days after

8    it is served.  The 21-day hold period is "absolutely prerequisite" to Rule 11 sanctions.

9    *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001).  However, Tran

10   simultaneously filed and served the instant motion for sanctions.  Rule 11 sanctions

11   are unavailable here.

12           Apparently in order to avoid the safe harbor limitations of Rule 11, Tran has

13   chosen to bring his motion pursuant to this Court's inherent powers to sanction a

14   party.  (Notice of Motion, p. 2.)  However, to the extent Tran claims alleged conduct

15   which would violate Rule 11, such as filing a frivolous complaint (see Motion, p. 15),

16   the motion must be denied because courts may not impose sanctions under the court's

17   inherent power for conduct sanctionable under Rule 11.  Indeed, courts "must be

18   especially cautious in invoking inherent authority to cure a procedurally defective

19   Rule 11 order, lest ... the restrictions in [Rule 11] become meaningless."  *Hutchinson*

20   *v. Pfeil*, 208 F.3d 1180, 1186-1187(10th Cir. 2000).

21           Federal courts do have the inherent power to impose sanctions for "bad faith"

22   conduct in litigation.  However, a court may impose sanctions under its inherent

23   power, it must find that the lawyer or party "acted in bad faith, vexatiously, wantonly

24   or for oppressive reasons."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 45-46 (1991).

25

26           [1]    As further evidence of Tran's counsel's gamesmanship and hardball tactics in
27   this action, on May 19, 2008, Tran's attorney Joseph DiMonda served the undersigned
     Progressive counsel with a deposition subpoena to testify in the underlying automobile
28   accident action *Tran v. Arrellano, et al.*, San Diego Superior Court Case No. 37-2007-
     00065432-CU-PA-CTL.  (Exh. 1.)

1   Because sanctions imposed under the court's inherent power are punitive in
2   nature, and are based on allegations of fraud or other wrongdoing, a heightened
3   standard of proof applies.  Clear and convincing evidence of "bad faith" conduct is
4   required; a mere preponderance of the evidence is insufficient.  *Shepherd v. ABC*, 62
5   F.3d 1469, 1476-1477 (D.C. Cir. 1995); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115,
6   1118 (1st Cir. 1989).  There is no such admissible evidence.

7        In lieu of evidence, Tran's motion alleges a fictional scheme in which insurers
8   Progressive and A.I.G. Insurance, law firms Robie & Matthai and Winet, Patrick &
9   Weaver, and restaurant corporation Chili's each took actions in two different lawsuits
10  (the underlying state personal injury action and this federal action) to "manipulate"
11  the federal and state courts.  However, there is no admissible evidence of such
12  concerted action; it is an invention of Tran's counsel.  More importantly, any alleged
13  misconduct on the part of other parties may not be imputed to Progressive and Robie
14  & Matthai, the parties to whom Tran's motion is directed.  That is because inherent
15  sanctions are based on the sanctioned parties *own individual conduct*, without regard
16  to misconduct by other parties and attorneys.  *Primus Financial Services, Inc. v.*
17  *Batarse*, 115 F.3d 644, 650.  Thus, any alleged actions by insurer A.I.G., law firm
18  Winet, Patrick & Weaver, and restaurant corporation Chili's are irrelevant and must
19  be disregarded for the purposes of the instant motion.

20  **2.    Progressive's Complaint for Declaratory Relief Was Warranted by Law.**

21       Tran claims that Progressive's Complaint for declaratory relief was frivolous
22  under Rule 11 standards.  (Motion at 5-6.)  Conduct that withstands the scrutiny of
23  Rule 11 cannot be punished under the court's inherent power.  See *Gillette Foods,*
24  *Inc. v. Bayernwald-Fruchteverwertung, GmbH*, 977 F.2d 809, 814 & note 9 (3rd Cir.
25  1992) ("We ... find it hard to conceive how the tortious interference claim survives
26  Rule 11 scrutiny, yet can be sanctioned as a claim brought in bad faith").  As
27  established below, Progressive's Complaint survives Rule 11 scrutiny.

28       Because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity

1  in pursuing factual or legal theories," *Golden Eagle Distrib. Corp. v. Burroughs*

2  *Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986), courts "have interpreted [Rule 11's]

3  language to prescribe sanctions, including fees, only in the 'exceptional

4  circumstance,' where a claim or motion is patently unmeritorious or frivolous."

5  *Riverhead Sav. Bank v. National Mortg. Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir.

6  1990), citing *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194

7  (3d Cir. 1988). "Litigants misuse the Rule when sanctions are sought against a party

8  or counsel whose only sin was being on the unsuccessful side of a ruling or

9  judgment." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).

10      "An objective standard of reasonableness applies to determinations of

11  frivolousness." *Woodrum v. Woodward County, OK*, 866 F.2d 1121, 1127 (9th Cir.

12  1989). "The key question in assessing frivolousness is whether a complaint states an

13  arguable claim -- not whether the pleader is correct in his perception of the law."

14  *Hudson v. Moore Business Forms Inc.*, 827 F.2d 450, 453 (9th Cir. 1987). As shown

15  below, this is not the "exceptional circumstance" of a patently frivolous complaint.

16      As Progressive's opposition to the Motion to Dismiss demonstrated, the

17  evidence submitted in this case already suggests a high probability that defendants

18  will obtain a significant judgment against Progressive's insured, Arrellano, far in

19  excess of the $15,000 policy limit. (**Doc. # 6**.) In addition, evidence developed since

20  the briefing on the Motion to Dismiss shows that it is basically certain that defendant

21  Tran and/or Arrellano will sue Progressive for breach of contract and bad faith,

22  alleging a failure to settle the claim against Arrellano within policy limits. (See

23  Progressive's Motion for Reconsideration, Doc. # 18.)

24      Briefly, on March 31, 2008, Progressive received a copy of a letter of the same

25  date from Arrellano's attorney in the underlying action, Randall Winet, to Tran's

26  attorney, Christopher Angelo. The letter discussed a prospective bad faith lawsuit

27  against Progressive and Arrellano's willingness to assign his bad faith rights. **Exh. 1**.

28  Attached to the letter was a proposed Covenant not to Execute or Enforce Judgment,

which includes an assignment of Arrellano's breach of contract and bad faith rights against Progressive.  In exchange, Tran's attorneys would agree not to execute on any judgment against Arrellano in excess of the $15,000 policy limit arising from the personal injury case, in which defendant Tran sustained catastrophic injuries. **Exh. 1**, Covenant Agreement at ¶¶ 1,2.  In that same letter, Winet stated Arrellano was prepared to sign the covenant. *Id.*  On April 28, 2008, defendant Tran's attorney filed a declaration in support of Tran's motion to set aside the default against Arrellano in this case, stating that he had been negotiating an assignment of Arrellano's bad faith rights against Progressive.  (Doc. 13, Angelo Decl. at ¶ 5.)  That same motion alleges that the amount Tran will seek from Progressive exceeds the amount in controversy required for diversity jurisdiction.  Doc. 13 at 3 ["The damages caused by Arrellano will exceed $40 million dollars. ... It is Tran's position that Progressive is now responsible to indemnify Arrellano for an unlimited amount of potential damages due to Progressive's failure to settle for Arrellano's policy limits"].

The only conceivable purpose of the covenant is to obtain Arrellano's bad faith rights, and to enforce those rights against Progressive in a separate lawsuit.  This evidence demonstrates that it is not just likely that Tran will file a bad faith action against Progressive, it is a virtual legal certainty.  (See Progressive's Motion for Reconsideration, Doc. # 18.)

There is ample legal authority that Progressive's declaratory relief action satisfied the minimum amount in controversy requirement when it was filed.  "For jurisdictional purposes in actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation or the value of the right to be protected." *Energy Catering Servs. v. Burrows*, 911 F.Supp. 221, 223 (E.D. La. 1995).  The insurer in *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002), sued its insured for declaratory relief that its liability insurance policy did not cover environmental pollution claims against the insured by third parties. *Ibid*.  The policy had $1 million liability limits, but the third parties' claims were less

than $75,000. *Ibid.* The Court held that the jurisdictional amount in controversy was the *value of the claims* presently asserted against the insured, not the face amount of the policy. *Ibid.* "[I]n declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in controversy is measured by the value of the underlying claim- not the face amount of the policy." *Id.* at 911.

Moreover, in determining the amount in controversy for purposes of subject matter jurisdiction, courts may consider future lawsuits, not just those that are pending. In *Allstate Insurance Company v. Hilbun*, the court held it could consider the defendant's "promised bad faith lawsuit" in determining the amount in controversy for purposes of subject matter jurisdiction. *Allstate Insurance Company v. Hilbun*, 692 F.Supp. 698, 700-701 (S.D. Miss. 1988). There, Allstate filed a declaratory relief action in which it sought an adjudication of its obligation to pay uninsured motorist benefits. *Ibid.* The insured threatened, but had not yet filed, a bad faith action for Allstate's alleged failure to pay those benefits. *Ibid.* The court held that in determining the amount in controversy, it could consider not only the amount at issue in the underlying action, but also the "promised" bad faith claim, even though it had not yet been filed. *Ibid.*; see also *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F. 3d 1471, 1474, n. 2 (9th Cir. 1997) [court may consider "potential liability" in determining amount in controversy]; *The Prudential Ins. Co. v. Thomason*, 865 F. Supp. 762, 765 (C.D. Utah 1994) [court may consider possible "future claims" between insurer and insured in evaluating amount in controversy]; *State Farm Fire & Cas. Co. v. Carnahan*, 2008 U.S. Dist. LEXIS 4922 (W.D. MO 2008) [declaratory relief action in which liability for full amount of potential judgment without regard to policy limits is sufficient to meet jurisdictional limit because potential judgment in excess of minimum amount in controversy requirement].

Thus, there is authority that courts may consider a potential bad faith action in assessing the amount in controversy. As the *Hartford* court confirmed, it is the value

1  of defendants' underlying claim against Arrellano that governs the amount in

2  controversy, *not* Progressive's $15,000 policy limit.  (See Doc. 13 at 3 ["The damages

3  caused by Arrellano will exceed $40 million dollars. ... It is Tran's position that

4  Progressive is now responsible to indemnify Arrellano for an unlimited amount of

5  potential damages due to Progressive's failure to settle for Arrellano's policy

6  limits"]).  Even though defendant has yet to file his bad faith lawsuit against

7  Progressive stemming from its alleged failure to settle within policy limits, the

8  proposed covenant and assignment of rights, and Tran's counsel's pleadings

9  confirming the intent to file that bad faith action, strongly support the conclusion that

10  a bad faith action is a legal certainty.  That it has yet to be filed is immaterial; like the

11  insurer in *Hilburn*, in deciding to file its declaratory relief action, Progressive was

12  entitled to rely on the potential bad faith action and its multimillion dollar claim for

13  damages for purposes of establishing diversity jurisdiction.

14      The facts and authorities presented above amply demonstrate that Progressive's

15  declaratory relief complaint was warranted in both fact and law.  This action does not

16  constitute the "'exceptional circumstance,' where a claim or motion is patently

17  unmeritorious or frivolous."  *Riverhead Sav. Bank v. National Mortg. Equity Corp.*,

18  893 F.2d at 1115.[2]  It would appear that the Court was not persuaded by the case law

19  cited by Progressive and decided to follow different authority.  However, there was

20  authority that Progressive's lawsuit satisfied the prerequisite of diversity jurisdiction.

21  Tran wrongly contends that was no supporting authority.  The filing of the

22  declaratory relief action was not sanctionable.  Importantly, the Court's dismissal was

23  without prejudice, and did not conclude the lawsuit was lacking in merit but rather

24  that it was premature.  Thus, Progressive's "only sin was being on the unsuccessful

25  side of a ruling," which is not a sanctionable event.  *Gaiardo v. Ethyl Corp.*, 835 F.2d

26  at 483.

27  ───────────────

28      [2]      Nor is there any admissible evidence of an "improper purpose" before the
court.  (See below, Part 4.)

K:\4461\Pleading\Oppo Mtn Sanctions.wpd                    13

**3.    Progressive's Application for Default Judgment Was Not "Misleading."**

Tran claims that Progressive used its lawyers "to mislead this Court by omitting all damaging evidence in papers submitted to the Court."  (Motion at 13-14.) Tran's flawed argument arises from a declaration filed in support of Progressive's Application for Default  Judgment Against Defendant Leonel Arrellano.

First, there was no attempt to "mislead" the Court as to Tran's legal contentions.  Progressive's Complaint itself alleges that:

> "Attorney Angelo has accused Progressive of misconduct and claims that Progressive's failure to accept Attorney Nguyen's January 26, 2007 policy limits demand has eliminated the stated limits of the policy.  As a result of the erroneous contention that Progressive has "taken the lid off its policy" by not accepting Attorney Nguyen's conditional demand of January 26, 2007, Mr. Tran claims, *inter alia*, that a conflict of interest has arisen between Progressive's defense counsel and Mr. Arrellano, that Mr. Arrellano should stipulate to a multi-million dollar judgment and that Progressive should bear liability for these extracontractual claims."

(Complaint, ¶ 21 and Exh. 2 thereto.)

Additionally, Tran's position, along with supporting evidence, was presented to this Court on numerous occasions by means of Tran's Motion to Dismiss, Amended Motion to Dismiss, Reply Brief in Support of Motion to Dismiss, Motion to Set Aside Default and Amended Motion to Set Aside Default.  (Doc. Nos. 4, 5, 7, 11, 13.) Progressive simply could not "hide" from the Court evidence which already repeatedly appears in this Court's own records.

Second, and most important, as Tran fails to either understand or to inform the Court, in the context of an application for default judgment, it is *not* incumbent on the applicant to include "all damaging evidence" or to include "the complete correspondence between Tran's prior attorney and Progressive related to Tran's policy limit demands on Progressive."  (See Motion at 13-14.)

1    At the time the Application for Default Judgment Against Defendant Leonel

2  Arrellano was filed (Doc. # 12, filed April 23, 2008), the clerk of the Court had

3  already entered default against Arrellano.  (Doc. # 10, filed April 9, 2008.)  The

4  clerk's entry of judgment required Progressive to apply for a default judgment within

5  30 days of entry of default or face dismissal of the complaint.  S.D. Cal. Local Rule

6  55.1.

7    The clerk's entry of default, by itself, conclusively established Arrellano's

8  liability on April 9, 2008.  That is because, "[u]pon default, the well-pleaded

9  allegations of the complaint *relating to liability* are taken as true." *Dundee Cement*

10  *Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983);

11  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ["The general

12  rule of law is that upon default the factual allegations of the complaint, except those

13  relating to the amount  of damages, will be taken as true."]; *TeleVideo Systems, Inc. v.*

14  *Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

15    Not only did the entry of default against Arrellano establish his liability, it also

16  precluded introduction of evidence supporting Arrellano's potential affirmative

17  defenses, such as the "damaging evidence" alleged by Tran.  Such evidence, which

18  would contest the settled issue of liability, is improper in default proceedings.

19  *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2nd Cir.

20  1992).

21    In light of the above cited authorities, there was no requirement, or indeed any

22  purpose, for Progressive and its counsel to include any alleged "damaging evidence"

23  concerning Arrellano's (or Tran's) potential defenses to this action.  This Court

24  should not tolerate Tran's gamesmanship.  See *Gaiardo v. Ethyl Corp.*, 835 F.2d 479,

25  485 (3rd Cir. 1987) ["The use of Rule 11 as an additional tactic of intimidation and

26  harassment has become part of the so-called "hardball" litigation techniques espoused

27  by some firms and their clients. Those practitioners are cautioned that they invite

28  retribution from courts which are far from enchanted with such abusive conduct"].

1    **4.    There Is No Evidence Supporting Tran's Speculative Claims of "Improper**
2         **Purpose," Much Less the Required Clear and Convincing Evidence.**

3         Tran's motion alleges a fictional scheme in which insurers Progressive and
4    A.I.G., law firms Robie & Matthai and Winet, Patrick & Weaver, and restaurant
5    corporation Chili's each took actions in two different lawsuits (the underlying state
6    personal injury action and this federal action) to "manipulate" the federal and state
7    courts.  A simple reading of Tran's allegations of an conspiratorial "scheme" makes
8    clear that these baseless accusations are nothing more than speculation, conjecture
9    and vitriol.  Motion at 7-12.   To the contrary, the evidence is that no such improper
10   "scheme" exists; it is nothing more than an invention of Tran's counsel.

11        The actual admissible evidence submitted by Tran does not support his
12   accusations.  A November 30, 2007 letter from Randall Winet of Winet, Patrick &
13   Weaver to Tran's counsel makes clear that (1) Progressive did not consult with
14   Winet, Patrick & Weaver in filing its federal declaratory relief action and (2) Winet,
15   Patrick & Weaver did not assist Progressive in filing the declaratory relief action.
16   (Motion, Exh. 10.)  In an April 18, 2008 letter, Mr. Winet also denied that any
17   decisions in the underlying case were based on any pre-existing or ongoing business
18   relationship with A.I.G. Insurance.  (Motion, Exh. 11.)

19        Additionally, the law firm Robie & Matthai did not consult with or advise
20   A.I.G. Insurance, Winet, Patrick & Weaver, and/or Chili's regarding its filing or any
21   conduct related to the prosecution of this federal declaratory relief action.  (Funnell
22   Decl., ¶ 5.)  Progressive's attorneys certainly did not engage in any bad faith
23   "scheme" with these entities or their lawyers in order to manipulate the federal and
24   state court systems.  (Funnell Decl., ¶ 6.)

25        While Tran may not like the unfortunate facts that Arrellano, from whom Tran
26   seeks an assignment of bad faith rights, was incarcerated and is unrepresented by
27   counsel in this action, and may be deported after completion of his sentence, these
28   facts are not indicative that Progressive, A.I.G., law firms Robie & Matthai and

1   Winet, Patrick & Weaver, and Chili's conspired in any improper "scheme" to assist

2   Progressive in avoiding bad faith liability.  Tran's baseless and unsupported

3   accusations do not constitute *any* evidence of the "bad faith" conduct needed to

4   impose inherent power sanctions, much less the clear and convincing evidence

5   required by law.

6                                        **<u>CONCLUSION</u>**

7        For the obvious reasons, Tran's motion is not well taken and must be denied.

8

9   DATED: June 2, 2008                    ROBIE & MATTHAI
                                           A Professional Corporation
10

11

12                                     By:  s/**Ronald P. Funnell**
                                           JAMES R. ROBIE
13                                         KYLE KVETON
                                           RONALD P. FUNNELL
                                           Attorneys for Plaintiff PROGRESSIVE WEST
14                                         INSURANCE COMPANY
                                           E-Mail:      RFunnell@romalaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **DECLARATION OF RONALD PETER FUNNELL**

2

3   I, RONALD P. FUNNELL, declare as follows:

4       1.      I am an attorney licensed to practice law in the state of California and am

5   an attorney with the law firm of Robie and Matthai, attorneys representing Plaintiff

6   Progressive West Insurance Company in this case.  The facts stated in this declaration

7   are from my own personal knowledge and I would and could testify competently to

8   these facts if called to do so.

9       2.      Attached hereto as **Exhibit 1** is a true and correct copy of a deposition

10  subpoena for my testimony in the underlying auto accident case, *Tran v. Arrellano*.

11  Tran's attorney Joseph Di Monda caused a process server to serve the subpoena on

12  me on May 19, 2008.  As Tran's counsel are aware, I have no personal knowledge or

13  experience concerning the facts or circumstances of the underlying state litigation and

14  have not had any involvement with any of the named parties to that litigation.

15      3.      On or about March 31, 2008, Plaintiff Progressive received the March

16  31, 2008 letter from Attorney Winet to Attorney Angelo and the attached Covenant

17  Not To Execute.  A true and correct copy of the March 31, 2008 letter and Covenant

18  is attached as **Exhibit 2**.

19      5.      In the preparation of the complaint and other filings on behalf of

20  Progressive West Insurance Company in this action, I did not consult with A.I.G.

21  Insurance or its attorneys, the law firm Winet, Patrick & Weaver or any of its

22  attorneys, or Chili's Restaurant or its attorneys.  I did not advise any of the above-

23  mentioned entities or their attorneys in advance of planned filings on behalf of

24  Progressive.

25      6.      I did not participate in any "scheme," as alleged by Tran's attorneys, to

26  "manipulate" the federal or state court systems.  My office filed the Complaint for

27  Declaratory Relief for the sole purpose of obtaining a court declaration concerning

28  whether a January 26, 2007 letter sent by Tran's counsel to Progressive constituted a

1   legally cognizable policy limits demand.  The Complaint was not filed for any other,

2   much less any improper, purpose.

3        I declare under penalty of perjury under the laws of the State of California that

4   the foregoing is true and correct.

5        Executed this 2nd day of June 2008, at Los Angeles, California.

6

7

8                             s/**Ronald P. Funnell**

9                           RONALD P. FUNNELL
                        E-Mail:     RFunnell@romalaw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2      I declare that I am over the age of eighteen (18) and not a party to this action. My
business address is 500 South Grand Avenue, 15th Floor, Los Angeles, CA 90071-2609.

3

4      On June 2, 2008, I served the foregoing document(s) described as:

5            **OPPOSITION TO MOTION FOR SANCTIONS AGAINST**
             **PLAINTIFF PROGRESSIVE WEST INS. CO. AND ITS**
             **ATTORNEYS ROBIE & MATTHAI; DECLARATION OF**

6            **RONALD P. FUNNELL**

7    on all interested parties in this action by placing a true copy of each document, enclosed in a
sealed envelope addressed as follows:

8

9      *Defendant Leonel Arrellano, In Pro*           *Courtesy Copy via Mail*
       *Per:*                                          Hon. John A. Houston
       Leonel Arrellano, Inmate #F77654               Southern District of California

10     c/o Division of Adult Operations               940 Front Street, Courtroom 11
       Sierra Conservation Center                     San Diego, CA 92101-8900

11     5100 O'Byrnes Ferry Road
       Jamestown, CA 95327

12
     ( )    **BY PERSONAL SERVICE:** I delivered such envelope by hand to the above

13          addressee(s).

14   **(X)** **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be
            delivered to an overnight courier service (OnTrac), for delivery to the above

15          addressee(s).

16   ( )    **BY FACSIMILE TRANSMISSION:** I caused the above-referenced document(s) to
            be transmitted to the above-named person(s) at the above facsimile number.

17
                          *Attorneys for Defendant, Bun Bun Tran:*

18                        Christoper E. Angelo, Esq.
                          Joseph Di Monda, Esq.

19                        ANGELO & DI MONDA LLP
                          1721 No. Sepulveda Boulevard

20                        Manhattan Beach, CA 90266-5014
                          Telephone:    (310) 939-0099

21                        Facsimile:    (310) 939-0023

22   **(X)** **BY E-SERVICE:** I caused the above-referenced document(s) to be electronically
            served on the above counsel of record through the Court's CM/ECF filing and service

23          system.

24   **(X) (Federal)**       I declare that I am employed in the office of a member of the bar of this
                             court at whose direction the service was made.

25
            Executed on June 2, 2008, at Los Angeles, California.

26

27
                                   s/Windy Gale Tyler

28                                 Windy Gale Tyler