1  Christopher E. Angelo [70007]
   Joseph Di Monda [184640]
2  ANGELO & DI MONDA, LLP
   1721 N. Sepulveda Blvd.
3  Manhattan Beach, California 90266-5014
   Telephone: 310-939-0099
4  Fax: 310-939-0023

5  Attorneys for Defendants, Bun Bun Tran and Le Thi Nguyen

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 PROGRESSIVE WEST INSURANCE        NO. 07- CV 1999 JAH (POR)
   COMPANY, an Ohio corporation,
11                                   DEFENDANT BUN TRAN'S
                                     OPPOSITION TO PLAINTIFF'S
12      Plaintiffs,                  MOTION FOR
                                     RECONSIDERATION
13 v.

14 BUN BUN TRAN, LEONEL             Time:  July 14, 2008
   ARRELLANO,                       Date:  2:30 p.m.
15                                  Ctrm.: 11
        Defendants.                        940 Front Street
16                                         San Diego, CA 92101

17

18        Defendant Bun Tran ("Tran") submits his Opposition to Progressive West

19 Insurance Company's ("Progressive") Motion for Reconsideration of this Court's

20 Dismissal of this Action for Lack of Diversity Jurisdiction.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

# TABLE OF AUTHORITIES

**CASE LAW:**

AllState Ins. Co. v. Hilbun
(S.D. Miss. 1988) 692 F.Supp. 698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bennett v. Shahhal
75 Cal.App.4th 384, 390 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Budget Rent-A-Car, Inc. v. Higashiguchi
(9th Cir. 1997) 109 F.3d 1471, 1473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Coastal Transfer Co. v Toyota Motor Sales, U.S.A., Inc.
(1987) 833 F.2d 208, 211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cain vs. State Farm
(1975) 47 Cal.App.3d 783 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cohn v. Petsmart, inc.
(9th Cir. 2002) 282 F.3d 837 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Feature Realty, Inc. v. City of Spokane
(2003) 331 F.3d 1082, 1093 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Hartford Ins. Group v. Lou-Con Inc.
(5th Cir. 2002) 293 F.3d 908 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hunt v. Washington State Appel Adver. Comm'n
(1977) 432 U.S. 333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jackson v. American Bar Ass'n
(9th Cir. 1976) 538 F2d 829 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Johnson v. Wattenbarger
(7th Cir. 2004) 361 F3d 991, 993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Lazzarevich v. Lazzarevich
(1952) 39 Cal.2d 48, 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Nationwide Mut. Ins. Co. v. Rowles by Rowles
(E.D. Pa. 1993) 818 F. Supp. 852. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Amerson
(1984) 151 Cal.App.3d 165, 169) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

St. Paul Mercury Indem. Co. v. Red Cab Co.
(1938) 303 U.S. 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.
(1999) 72 Cal.App.4th 1422, 1428-1429 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The Prudential Ins. Co. v. Thomason
(C.D. Utah 1994) 865 F. Supp. 762 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL RULES:**

Federal Rule of Civil Procedure, Rule 59(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Federal Rule of Civil Procedure, Rule 60(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Southern District Local Rules
Rule 7.1(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## I.    INTRODUCTION

On April 29. 2008, this Court dismissed Progressive's Complaint for lack of diversity jurisdiction. This Court rejected Progressive's attempt to use speculative extra-contractual liability to reach the diversity jurisdiction amount of $75,000. As this Court stated in its April 28, 2008, Order Granting Defendant's [Tran] Motion to Dismiss for Lack of Subject Matter Jurisdiction, Progressive cannot meet the diversity amount because its insurance policy is $15,000 and as this Court noted "the relief plaintiff is seeking in the instant complaint is a declaration that its liability is also capped at that amount [$15,000]. This Court finds that plaintiff cannot meets its burden of demonstrating that the amount in controversy in this case exceeds the $75,000 threshold required at the time the lawsuit was filed because the policy at bar limits liability to $15,000 and there is only a potential that Progressive's liability may exceed that." Exhibit 1, April 28, Order Dismissing Progressive's Complaint., p. 5, lns. 4-5.

Now Progressive claims it has new evidence that an assignment of Leonel Arrellano's [Arrellano] bad faith rights to Tran is "imminent," and that this assignment will result in a bad faith action against Progressive by Tran. *See* Motion for Reconsideration, p. 9, lns. 3-8. Even if this is true, which it is not, it changes nothing as it is the same argument Progressive previously made.

Contrary to Progressive's argument, there is no new evidence. Progressive knew about the fact that Arrellano and Tran were negotiating an assignment of bad faith rights from Arrellano to Tran. Progressive knew and previously argued that "if" Tran obtains an assignment of Arrellano's bad faith rights, and "if" the state court finds Arrellano's liability exceeds the $15,000 policy limit, Tran "may" sue Progressive. Progressive made the exact same argument in its Opposition to Tran's Motion to Dismiss. Exhibit 2, Progressive's Opp. to Tran's Motion to Dismiss, p. 4, lns. 21-28.

Progressive's Motion for Reconsideration should be denied and Progressive should be sanctioned for bringing this frivolous motion.

## II.    SUMMARY OF RELEVANT FACTS

Tran was catastrophically injured in an automobile accident with a vehicle driven

by Arrellano.  Decl. of Joseph Di Monda, Esq.  Progressive insures Arrellano under an automobile liability policy with a $15,000 limit.

Tran, by and through his guardian ad litem, Le Thi Nguyen filed an action ("the State Action") in San Diego Superior Court against Arrellano, and also against Patricia Cole, Chili's Restaurants and the City of San Diego.  San Diego Superior Court Case number 37-2007-00065432-CU-PA-CTL, Department C-62, the Honorable Ronald L. Styn, Judge.  Progressive is not a party to that lawsuit.  Decl. of Joseph Di Monda.

Arrellano, was arrested by the San Diego Police Department and charged with driving while intoxicated.  Arrellano pled guilty to various felonies and was sentenced to custody for 6 years.

Tran has settled with defendant Cole.  No judgments have been entered and no determinations of liability as to any party have been made.  At this time trial is set for August 1, 2008 in the San Diego Superior Court.  Decl. of Joseph Di Monda.

Prior to filing the State Action, Tran made a demand on Progressive for Arrellano's $15,000 liability policy.  Progressive did not tender the liability policy.  Tran's position is that since Progressive failed to tender the liability policy when demanded, the liability policy now has no liability limit and that Progressive is liable for any amount which a jury may find Arrellano must pay.

Progressive filed a federal lawsuit asking for a declaration of its rights and responsibilities  under Arrellano's $15,000 automobile liability policy.  Tran moved to dismiss said lawsuit for lack of diversity jurisdiction.

On April 28, 2008, this Court issued an Order Granting Tran's Motion to Dismiss for Lack of Jurisdiction.  Exhibit 1.

Now Progressive comes to this Court without any new evidence, falsely announcing that it has recently discovered new evidence of an "imminent" "proposed" agreement between Arrellano and Tran which "demonstrates with a high degree of probability" that there is a "strong likelihood" that it is a "virtual certainty" that Arrellano and Tran "may" enter into an agreement by which Arrellano "may" assign his bad faith rights to Tran.  See Mot. For Reconsideration, p. 1, lns. 10, 14, 21; p. 5, ln. 20; p. 9, ln. 7.

1   This is not only untrue, but even if believed, is pure speculation as shown by

2   Progressive's choice of words to describe what "may" occur. Progressive has previously

3   argued the same issues and evidence in its failed Opposition to Tran's Motion to Dismiss.

4   The result here should be the same.

5   **III.   SUMMARY OF THE LAW**

6       Progressive moves for reconsideration pursuant to Fed. Rule of Civ. Proc, Rule

7   60(b)(2).

8       "On motion and just terms, the court may relieve a party or its legal representative

9   from a final judgment, order, or proceeding for the following reasons: (2) newly

10  discovered evidence that, with reasonable diligence, could not have been discovered in

    time to move for a new trial under Rule 59(b)." F.R.C.P. Rule 60(b)(2).

11      However, pursuant to F.R.C.P. 60(b)(2), Progressive had to have discovered this

12  new evidence more "than 10 days after the entry of judgment." F.R.C.P. Rule 59(b).

13      Additionally, Progressive admits that "the newly discovered evidence must be of

14  such magnitude that production of it earlier would have been likely to change the

15  disposition of the case." Progressive's Mot. For Reconsideration, p. 4, lns. 13-15 (citing

16  Feature Realty, Inc., v. City of Spokane (2003) 331 F.3d 1082, 1093; Coastal Transfer

17  Co. v Toyota Motor Sales, U.S.A., Inc. (1987) 833 F.2d 208, 211).

18      Here, Progressive admits it discovered the purported "new" evidence on March 31,

19  2008, one month before this Court entered judgment and dismissed Progressive's

20  complaint. Further, Progressive previously argued the exact same evidence it argues in its

21  present motion. To wit, Arrellano "may" assign his bad faith rights against Progressive to

22  Tran. *See* , Progressive's Opp. To Tran's Motion to Dismiss, p. 4, lns. 21-28. The only

23  difference is that now Progressive wrongly claims that an assignment is "imminent."

24  Therefore, Progressive does not meet the requirement that the newly discovered evidence

    "would have been likely to change the disposition of the case." Id.

25  **IV.   PROGRESSIVE'S MOTION FOR RECONSIDERATION IS UNTIMELY**

26  **       AND SHOULD BE DENIED OUTRIGHT**

27      Progressive admits that it did not discover this purported new evidence until March

28

1  31, 2008. *See* Progressive's Mot. For Reconsideration, p. 2, lns 8-18; p. 4, lns. 18-23.

2  This Court may take judicial notice of the fact that it entered judgment dismissing

3  Progressive's complaint on April 29, 2008. *See* Exhibit 3.

4      Hence, Progressive's own pleadings are an admission that Progressive new about

5  this purported "new" evidence, one month before this Court entered judgment dismissing

6  Progressive's complaint.

7      F.R.C.P. 60 (b)(2) permits a litigant to move for reconsideration of a judgment,

8  using "newly discovered evidence" as the basis for it motion, only if the "newly

9  discovered evidence that, with reasonable diligence, could not have been discovered in

   time to move for a new trial under Rule 59(b)." F.R.C.P. Rule 60(b)(2).

10

11      Since Progressive admits that it discovered this purported "new evidence" one

12  month before this Court entered judgment dismissing its complaint, Progressive had to

13  make this Motion for Reconsideration in the same time period it had to move for a new

   trial, or, "no later than 10 days after the entry of judgment." F.R.C.P., 59(b).

14      Hence, Progressive had to move for reconsideration no later than 10 days after

15  April 29, 2008, or by May 9, 2008. Even adding 5 days for mailing, Progressive's motion

16  had to be filed by May 14, 2008.

17      Therefore, Progressive's Motion for Reconsideration, filed on May 29, 2008, is too

18  late and this Court need read no further before sanctioning Progressive and denying its

19  motion outright.

20  **V.    PROGRESSIVE'S MOTION ALSO VIOLATES THIS COURT'S LOCAL**

21      **RULES**

22      Progressive announces that it moves for reconsideration pursuant to Southern

23  District Local Rule 7.1(l). Progressive misuses Local Rule 7.1(l). Progressive's

   continued misapplication of rules and law cannot be overlooked by this Court as a

24  mistake. The Southern District local Rules do not permit Progressive to file a motion for

25  reconsideration in violation of the Federal Rules of Civil procedure.

26      "**Except** as may be allowed under Rules 59 and 60 of the Federal Rules of Civil

27  procedure, no motion or application for reconsideration shall be filed more than 30 days

28

after the entry of the ruling, order or judgment sought to be reconsidered." Southern Dist. Local Rule, 7.1(i) (emphasis added).

As argued above, Federal Rules of Civ. Proc., Rules 59 and 60, only permit a motion for reconsideration from a judgment dismissing a case to be filed within 10 days of the entry of judgment. The local rules make no exception to this time period for a motion for reconsideration from a judgment dismissing a case. That is why the local rule starts with the qualifier, **"except"** for those matters covered by Fed. Rules of Civ. Proc., Rules 59 and 60. The only issue raised by local rule 7.1(i) relates to rulings, order or judgments unrelated to those dismissing a case.

Hence, Progressive once again misapplies the law and its motion is untimely and should be denied outright and sanctions should be imposed on Progressive.

## VI.    PROGRESSIVE'S ARGUMENTS ARE A SHAM, UNTRUE, AND IT IS PERPETRATING A FRAUD UPON THIS COURT

A.    Progressive Was Aware of And Knew of All Negotiations Between Arrellano and Tran Related to Any Assignment of Bad Faith Rights; It Argued the Same Facts in Its Opposition to Tran's Motion to Dismiss its Complaint

Even if this Court finds Progressive's motion timely, Progressive argument that it could not have known of the alleged agreement between Arrellano and Tran before March 31, 2008, is a complete fabrication and violates a litigant and its attorneys' duty of candor and truthfulness to the courts.

For example, it is undisputed that Progressive is Arrellano's insurer and is responsible to indemnify him in the State Action. Progressive admitted in its Motion that it received this newly discovered evidence from Randy Winet, Arrellano's Progressive paid lawyer in the State Action. Progressive's Mot. For Reconsideration, p. 2, lns. 8-10. Hence Progressive's lawyer, Randy Winet, knew of this purported new evidence.

Pursuant to California law, "the issue of whether an attorney-client relationship is formed between an insurance company and the counsel it hires to defend an insured has arisen in several contexts. In analyzing these situations, the courts have described

1  counsel's representation as 'triangular.' (citations omitted). In other words, the attorney

2  represents two clients, the insured and the insurer." State Farm Mut. Auto. Ins. Co. v.

3  Federal Ins. Co. (1999) 72 Cal.App.4th 1422, 1428-1429.

4        Therefore, Progressive is Randy Winet's client. "A person [Progressive] is held to

5  know what his attorney knows and should communicate to him." Lazzarevich v.

6  Lazzarevich (1952) 39 Cal.2d 48, 50. "An attorney's knowledge is imputed to the client

7  [Progressive]. Bennett v. Shahhal 75 Cal.App.4th 384, 390 (citing People v. Amerson

8  (1984) 151 Cal.App.3d 165, 169).

9        Progressive, as Randy Winet's client, knew of the negotiations between Arrellano

10  and Tran by which Tran was attempting to obtain an assignment of Arrellano's bad faith

11  rights. Therefore, even if this Court find's that Progressive's Motion for Reconsideration

12  is timely, the alleged "new" evidence is not new at all because Progressive, as Randy

   Winet's client, knew of the negotiations at all times.

13        B.    Progressive is Still Using Extra-Contractual Liability to Obtain Diversity

14              Jurisdiction; It May Not Do So.

15        Once again Progressive argues that although its liability insurance policy is capped

16  at $15,000, the threat of a potential future bad faith action which "may" subject it to

17  liability above $75,000 is sufficient to meet the diversity jurisdiction minimum.

18        It's the same argument Progressive previously made and it should be denied again.

19  Moreover, Progressive is attempting to improperly use a motion for reconsideration as a

20  substitute for an appeal of this Court's decision and Order dismissing its case.

21        The amount in controversy required to grant this Court diversity jurisdiction must

22  be ascertained at the commencement of the action; later events generally do not affect

23  diversity jurisdiction. Thus, diversity jurisdiction exists if the complaint as filed puts

24  more than $75,000 at issue. Johnson v. Wattenbarger (7th Cir. 2004) 361 F3d 991, 993.

25  Hence, the potential of a future bad faith action which may or may not occur is not a

   factor in determining diversity jurisdiction.

26        A demand is "legally impossible" for jurisdictional purposes when it runs up

27  against a statutory or contractual cap on damages, or when the theories of damages

28

1  employ double counting.  Johnson v. Wattenbarger 361 F3d at 994.

2  Additionally, since this disputes involves an insurance contract, A party cannot

3  meet the jurisdictional amount by seeking a declaration of an additional coverage not in

4  issue at that time.  Nationwide Mut. Ins. Co. v. Rowles by Rowles,  (E.D. Pa. 1993) 818

5  F. Supp. 852.  In declaratory judgment suits involving liability insurance policies, the test

6  of jurisdiction is the maximum amount for which the insurer might be liable under the

7  policy.  Budget Rent-A-Car, Inc. v. Higashiguchi, (9th Cir. 1997) 109 F.3d 1471, 1473.

8  Here, Progressive admits in its complaint that its liability policy limits its damages

9  to $15,000.00; far below the diversity minimum of $75,000.00.  Hence, absent bad faith

10  by Progressive, combined with a jury determination of damages, Progressive's maximum
    liability under the policy is $15,000.00.

11  This Court already recognized the above legal principles when it found "that the

12  inclusion of potential liability based on a possible future lawsuit that may or may not be

13  filed by Tran's counsel is an appropriate measure of the amount in controversy for

14  diversity jurisdiction to exist here."  Exhibit 1, April 28, 2008, Order Dismissing Case for

15  Lack of Jurisdiction.

16  C.    There Is No Agreement Between Arrellano and Tran, and No Agreement Is

17         Imminent, by Which Arrellano "May" Assign His Bad Faith Rights to Tran.

18  Contrary to Progressive's claim, 1) there is no agreement between Arrellano and

19  Tran for an assignment of bad faith rights;  2) All negotiations for such agreement have

20  broken off;  3) no agreement is imminent because Progressive has interfered with the

21  negotiations; and, 4) Arrellano's Progressive paid counsel in the State Action has not

22  negotiated in Arrellano's best interest but has instead put Progressive's interests ahead of

23  Arrellanos.  Decl. of Christopher E. Angelo, Esq.

24  Hence, Progressive's motion for reconsideration is based upon a false premise.

    D.    Progressive's Motion is Sufficient Evidence That its Entire Argument is
25         Based Upon Speculation

26  As this Court properly noted, "the amount in controversy is measured by the value

27  of th object of the litigation and dismissal is appropriate only if it appears to a legal

28

1  certainty that the jurisdictional amount is not met. It is well settled that the amount in

2  controversy is determined at the time the complaint is filed." Exhibit 1,April 28, 2008,

3  Order Dismissing Progressive's Complaint (citing to Hunt v. Washington State Appel

4  Adver. Comm'n (1977) 432 U.S. 333, 346-348; Cohn v. Petsmart, inc. (9th Cir. 2002) 282

5  F.3d 837, 840; St. Paul Mercury Indem. Co. v. Red Cab Co. (1938) 303 U.S. 283, 289).

6       Here, Progressive's choice of words is sufficient evidence for this Court to

7  recognize the speculative nature of its claim. For example, Progressive argues that its

8  newly discovered evidence demonstrates with a "high degree of certainty" that Tran

9  "intends" to pursue a future bad faith action against Progressive. Mot. For

10 Reconsideration, p. 1, lns. 14-15. That there is a "strong likelihood" that Progressive will

11 be sued in the future. Mot. For Reconsideration, p. 1, lns. 20-21. Its financial exposure

12 will exceed $75,000 "in the likely event" it is sued. Mot. For Reconsideration, p. 1, lns.

13 22-23. Three is "little doubt" that Tran will sue Progressive in the future. Mot. For

14 Reconsideration, p. 2, lns. 4-6. "It is a virtual certainty" that Tran will sue Progressive in

15 the future. Mot. For Reconsideration, p. 5, lns. 19-21. And, the "proposed" assignment

16 of Arrellano's bad faith rights to Tran "strongly support" the possibility that bad faith

17 action against Progressive is "imminent." Mot. For Reconsideration, p. 9, lns. 1-7.

18      Nowhere in Progressive's argument does it say, nor can it say, to a legal certainty,

19 that a bad faith lawsuit has been filed or the amount of Progressive's damages.

## VI.    ONCE AGAIN PROGRESSIVE CITES TO CASE WHICH ARE INAPPLICABLE TO THE LEGAL ISSUES IN THIS DISPUTE

       Progressive continues with its incorrect analysis of the holdings of cases it argues

support its position. For example, Progressive claims that The Prudential Ins. Co. v.

Thomason (C.D. Utah 1994) 865 F. Supp. 762, 765, held that a court may consider extra

contractual liability in determining the amount in controversy. Mot. For Reconsideration,

p. 6, lns. 25-26. However, Progressive fails to tell this Court that the plaintiff in

Prudential was attempting to have the insurance policy rescinded and that diversity

jurisdiction was met because the value of the policy exceeded the jurisdictional minimum

and that it was first party bad faith case. Id. at 764-765. Here, there is no bad faith case

at all.

Progressive claims that <u>Hartford Ins. Group v. Lou-Con Inc.</u> (5th Cir. 2002) 293 F.3d 908 supports its position. In <u>Hartford</u>, the court held that although the insurance policy was $1 million, the claim against its did not exceed the diversity jurisdictional minium, and upheld the District Court's dismissal of the case.

Further, <u>Allstate Ins. Co. v. Hilbun</u> (S.D. Miss. 1988) 692 F.Supp. 698 is case in which there was a $100,000 liability limit in the insurance policy which exceed the jurisdictional limit, and the demand on the policy was sufficiently vague so as to have the court find it exceeded the jurisdictional minimum of $10,000. <u>Id.</u> at 700-701.

Progressive misleads this Court as to the holding of <u>Budget Rent-A-Car, Inc. v. Higashiguchi</u>, (9th Cir. 1997) 109 F.3d 1471. In <u>Budget</u> there were multiple plaintiffs. Diversity jurisdiction was met in <u>Budget</u> because the plaintiffs did not dispute the fact that the value of their claims exceeded the jurisdictional minimum. <u>Id.</u> at 1473. The issue raised by the <u>Budget</u> court in footnote 2 was whether the jurisdictional amount could include a plaintiff's claim for indemnification. <u>Id.</u> at 1474. It had nothing to do with the issues raised by Progressive.

The remainder of Progressive's purported authority are simply a list of the results of California bad faith cases which Progressive admits "might" result "if" there is a "future" bad faith action.

**VIII. ONCE AGAIN, PROGRESSIVE SPECULATES AS TO ITS POTENTIAL DAMAGES IN ORDER TO CREATE SHAM DIVERSITY JURISDICTION**

Progressive claims a right so intangible that its value is entirely speculative. To wit, how much Progressive "may" be liable to pay after adjudication of the State Action involving the issue of liability amongst 4 defendants, "if" a bad faith action is brought.

Progressive alleges that it has a $15,000 contract of insurance, which on its face is beneath the $75,000 Federal jurisdictional threshold. Progressive then makes a conclusory allegation that the value in controversy exceeds $75,000. The value in controversy can only exceed $15,000 if there is insurance bad faith on the part of Progressive because it failed to timely settle the third party claims against its insured

1  Arrellano by also failing to meet the conditions of Tran's settlement offer.

2      The determination of damages against Arrellano is the subject of the San Diego

3  Superior Court personal injury litigation. and will not be determined until after this State

4  litigation is concluded.  Progressive is not a party to the State litigation, but its insured

5  Arrellano is a party.

6      Progressive would be a "hypothetical" party in a "potential future" action only in

7  the event that an over limits judgment is rendered against Arrellano, at which time

8  Arrellano "may" assign the right to collect the over limits judgments to Bun Bun Tran

9  while reserving the right to sue Progressive for emotional distress and punitive damages,

   as recommended in Cain vs. State Farm (1975) 47 Cal.App.3d 783.

10      However, at this time no one can predict to a legal certainty who will be found

11  liable and how damages may be apportioned.

12      In such cases, diversity jurisdiction will not lie for lack of jurisdictional amount.

13  Jackson v. American Bar Ass'n (9th Cir. 1976) 538 F2d 829, 831.

14  **IX.**   **CONCLUSION**

15      For all of the above reason, Tran requests that this Court deny Progressive's

16  Motion for Reconsideration.

17

18

19  June 9, 2008                 ANGELO & DI MONDA, LLP

20

21                By:   S/Joseph Di Monda

22                     Christopher E. Angelo
                      Joseph Di Monda

23                     Attorneys for Defendants.
                      Bun Bun Tran and Le Thi Nguyen

24

25

26

27

28

## DECLARATION OF JOSEPH DI MONDA, ESQ.

I, Joseph Di Monda, declare,

1.  I am over the age of 18 years, I have personal knowledge of the facts stated herein and if called as a witness I would and could competently testify as follows;

2.  I am an attorney at law duly admitted to practice before all the courts of the State of California and the United States District Court for the Southern District of California  and the attorney of record herein for Defendant, Bun Bun Tran and make this declaration in support of his Opposition to Progressive's Motion far Reconsideration of this Court's dismissal of Progressive's complaint for declaratory relief.

3.  Tran was catastrophically injured in an automobile accident with a vehicle driven by Arrellano.

4.  Tran filed an action in San Diego Superior Court against Arrellano, and also against Patricia Cole, Chili's Restaurants and the City of San Diego.  San Diego Superior Court Case number 37-2007-00065432-CU-PA-CTL, Department C-62, the Honorable Ronald L. Styn, Judge.  Progressive is not a party to that lawsuit.

5.  Arrellano, was arrested by the San Diego Police Department and charged with driving while intoxicated.  Arrellano pled guilty to various felonies arising out of driving while intoxicated and leaving the scene of an accident and was sentenced to custody for 6 years.

6.  Tran has settled with defendant Cole.  No judgments have been entered and no determinations of liability as to any party have been made.  At this time trial is set for August 1, 2008 in the San Diego Superior Court

7.  Exhibit 1, attached hereto is a true and correct copy of this Court's April 28, 2008, Order Dismissing Progressive's Complaint.

8.  Exhibit 2, attached hereto is a true and correct copy of Progressive's Opposition To Tran's Motion to Dismiss Progressive's Complaint.

9.  Exhibit 3 attached hereto is a true and correct copy of this Court's April 29, 2008

1    Judgment dismissing Progressive's complaint.

2

3    I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.

5

6    June 9, 2008

7

8                                              S/Joseph Di Monda
                                               Joseph Di Monda
9                                              Attorney for Bun Tran

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHRISTOPHER E. ANGELO, ESQ.

I, Christopher E. Angelo, declare,

1.  I am over the age of 18 years, I have personal knowledge of the facts stated herein and if called as a witness I would and could competently testify as follows;

2.  I am an attorney at law duly admitted to practice before all the courts of the State of California and the United States District Court for the Southern District of California and the attorney of record herein for Defendant, Bun Bun Tran and make this declaration in support of his Opposition to Progressive's Motion for Reconsideration of this Court's dismissal of Progressive's complaint for declaratory relief.

3.  I have been negotiating with Randy Winet, Arellano's Progressive paid lawyer in the San Diego Superior Court action, to obtain an assignment of bad faith rights against Progressive from Arellano to Tran.

4.  I have been unable to obtain an assignment of Arellano's bad faith rights to Tran because Mr. Winet insists on terms which are unacceptable to my client because they immunize Progressive from bad faith liability thereby keeping Arellano exposed. This is explained in my May 12, 2008 letter to Arellano's counsel and Progressive, a truen and correct copy of which is attached hereto as Exhibit 4.

5.  The March 31, 2008 proposal by Mr. Winte, which Progressives claims is new evidence of an assignment of bad faith rights from Arellano to Tran was, and is, rejected.

6.  There are currently no negotiations between Arellano and Tran related to any assignment of Arellano's bad faith rights against Progressive to Tran.

7.  It is my opinion that Progressive and Mr. Winet intend to allow Arellano to have a huge multi-million dollar judgment be assessed against him.

8.  It is my opinion that Mr. Winet has abandoned his client and is solely protecting Progressive, which is why he gave his March 31, 2008 letter, and only this letter to

1    the law firm of Robie & Matthai, Progressive's lawyers in this action.

2  9.    Randy Winet has not negotiated in Arrellano's best interest but has instead put

3        Progressive's interests ahead of Arrellanos.

4  10.   There is no assignment of Arrellano's bad faith rights which is being considered

5        by me or my law firm on behalf of Tran.  Any such arguments made by

6        Progressive are an outright falsehood.

7

8        I declare under penalty of perjury under the laws of the State of California that the

   foregoing is true and correct.

9

10  June 9, 2008

11

12                                    S/Christopher E. Angelo
                                      Christopher E. Angelo
13                                    Attorney for Bun Tran

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10  PROGRESSIVE WEST INSURANCE      )   Civil No. 07cv1999 JAH(POR)
    COMPANY, an Ohio corporation,    )
11                                    )   ORDER GRANTING
                      Plaintiff,      )   DEFENDANT'S MOTION TO
12  v.                                )   DISMISS FOR LACK OF SUBJECT
                                      )   MATTER JURISDICTION
13  BUN BUN TRAN, LEONEL             )   [DOCS. # 4, 5]
    ARRELLANO,                        )
14                                    )
                      Defendants.     )
15  _____)

16                        **INTRODUCTION**

17       Now pending before the Court is the motion filed by defendant Bun Bun Tran

18  ("defendant" or "Tran") to dismiss the instant complaint for lack of subject matter

19  jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The

20  motion has been fully briefed by the parties. After a careful consideration of the pleadings

21  and relevant exhibits submitted by the parties, and for the reasons set forth below, this

22  Court GRANTS defendant's motion to dismiss for lack of subject matter jurisdiction and

23  DISMISSES the instant complaint without prejudice in its entirety.

24                        **BACKGROUND**

25       This case stems from a catastrophic automobile accident that occurred on

26  November 18, 2006, between Tran and defendant Leonel Arrellano ("Arrellano"). Compl.

27  ¶ 7. Plaintiff Progressive West Insurance Company ("plaintiff" or "Progressive") insured

28  Arrellano under an automobile policy with a bodily injury liability limit of $15,000. Id.

07cv1999

¶ 6. Arrellano was the driver of a vehicle that collided with Tran's vehicle causing serious head injuries to Tran leaving him comatose. Id. ¶¶ 9, 10. Arrellano, later found to be at fault, was subsequently arrested for driving under the influence of alcohol, driving without a license and leaving the scene of an accident. Id. ¶ 12. After a guilty plea, Arrellano was sentenced to six years custody. Id. Tran, through his guardian *ad litem*, filed a complaint in the San Diego County Superior Court on May 8, 2007, alleging causes of action for negligence and negligence *per se* against Arrellano, Patricia Cole, Chili's Restaurants and the City of San Diego. Id. ¶ 19; Di Monda Decl. ¶ 7. Progressive is not a party to the state court suit.

Progressive filed the instant complaint in this Court on October 16, 2007, seeking declaratory relief pursuant to the Declaratory Judgment Act, *see* 28 U.S.C. § 2201, in the form of a declaration as to the respective rights and duties of the parties involved under the automobile insurance policy issued to Arrellano. Defendant filed the instant motion to dismiss on November 28, 2007 and an amended motion on November 30, 2007. *See* Docs. # 4, 5. Progressive's opposition to the motion was filed on December 27, 2007. Doc. # 6. Defendant's reply brief was filed on January 2, 2008. This Court subsequently took the motion under submission without oral argument. *See* CivLR 7.1(d.1).

## DISCUSSION

Defendant moves to dismiss the instant complaint in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that plaintiff cannot meet the $75,000 jurisdictional threshold for diversity jurisdiction.[1] *See* Doc. # 5 at 5.

---

[1] Although defendant also initially moves to dismiss on the grounds that the issues presented are not ripe for review because there has not been any determination of damages owed by any party, *see* Doc. # 5 at 4, plaintiff correctly points out that the Declaratory Judgment Act "allows adjudication of the parties' rights and obligations on a matter in dispute regardless of whether claims for damages or injunctive relief have yet arisen." Doc. # 6 at 2-3. In reply, defendant does not appear to disagree with plaintiff's position, but instead focuses on his arguments concerning the jurisdictional amount in controversy. *See* Doc. # 7. However, because this Court ultimately finds that subject matter jurisdiction is lacking, this Court does not reach this issue.

1.  Legal Standard

The federal court is one of limited jurisdiction. *See* Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. Steel Co. v. Citizens for a Better Environ., 118 S.Ct. 1003, 1012 (1998). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id. (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 614 (1868)). Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). When considering a Rule 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Id. (quoting Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See* Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

"[T]he Declaratory Judgment Act is not a jurisdictional statute" and "does not create subject matter jurisdiction where none otherwise exists." Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970). Thus, the basis for federal jurisdiction in a declaratory relief action must be independent of the Declaratory Relief Act. *See* Stock West, Inc. v. Confederated Tribes of Colville Reservations, 873 F.2d 1221, 1225 (9th Cir. 1989). Here, plaintiff alleges jurisdiction based solely on diversity. *See* Compl. ¶ 4. To establish diversity jurisdiction, there must be: (1) complete diversity among opposing parties; and (2) an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a). In declaratory relief actions, "the amount in controversy is measured by the value of the object of the litigation" and dismissal is appropriate only if it appears to a "legal certainty" that the

1    jurisdictional amount is not met. Hunt v. Washington State Apple Adver. Comm'n, 432

2    U.S. 333, 346-48 (1977); Cohn v. Petsmart, Inc., 282 F.3d 837, 840 (9th Cir. 2002). It

3    is well settled that the amount in controversy is determined at the time the complaint is

4    filed. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

5    2.    Analysis

6         In support of his contention that the jurisdictional amount in controversy has not

7    been met, defendant points out that the $75,000 diversity jurisdiction threshold exceeds

8    Progressive's contractual liability under the $15,000 policy issued to Arrellano. Doc. # 5

9    at 5. Defendant argues that plaintiff seeks to improperly include its potential liability in

10   the amount in controversy calculation. Id. at 5-6. Thus, defendant contends that any

11   liability above Progressive's $15,000 policy limits is too speculative and, therefore, plaintiff

12   "cannot show to a legal certainty what its financial exposure may be when the lawsuit is

13   adjudicated." Id. at 6.

14        Plaintiff contends that the jurisdictional threshold has been met here because there

15   is a potential for liability well exceeding $75,000. See Doc. # 6 at 7. Plaintiff claims that

16   Tran's underlying claim against Arrellano, which was valued in excess of $700,000 as of

17   January 26, 2007 and is expected to "reach tens of millions of dollars," id. at 8 (quoting

18   Doc. # 5 at 3), is the proper measure of the jurisdictional amount in controversy because

19   that amount is Progressive's potential liability in Tran's future claim against it.[2] Id.

20   Plaintiff explains that the purpose of the instant lawsuit is simply to obtain a

21   determination as to whether a letter sent by Tran's counsel to Progressive constitutes a

22   "legally cognizable 'policy limits demand.'" Id. at 9. According to plaintiff, if the letter is

23   found not to be such a demand, then plaintiff's "indemnity obligation [will] still [be]

24   defined by the stated $15,000 limits under the policy." Id.

25        This Court is unconvinced that inclusion of potential liability based on a possible

26

27        [2] Plaintiff's complaint alleges that Tran's attorney "intends to obtain a judgment against Mr.
     Arrellano and then sue Progressive on behalf of Mr. Tran for breach of contract and breach of the implied
28   covenant of good faith and fair dealing for failure to settle Mr. Tran's claim within policy limits" and "has
     accused Progressive of misconduct and claims Progressive's failure to accept [the] January 26, 2007 policy
     limits demand has eliminated the stated limits of the policy." Compl. ¶¶ 20, 21.

1  future lawsuit that may or may not be filed by Tran's counsel is an appropriate measure
2  of the amount in controversy for diversity jurisdiction to exist here. At the time the
3  instant lawsuit was filed, Progressive's liability under the policy issued to Arrellano was
4  capped at the policy limits of $15,000. In fact, the relief plaintiff is seeking in the instant
5  complaint is a declaration that its liability is also capped at that amount. This Court finds
6  that plaintiff cannot meet its burden of demonstrating that the amount in controversy in
7  this case exceeds the $75,000 threshold required at the time the lawsuit was filed because
8  the policy at bar limits liability to $15,000 and there is only a potential that Progressive's
9  liability might exceed that limit. *See* Kokkonen, 511 U.S. at 377. Therefore, this Court
10 finds dismissal is appropriate because it appears to a "legal certainty" that the
11 jurisdictional amount cannot be met. Hunt, 432 U.S. at 346-48. Accordingly,
12 defendant's motion to dismiss for lack of subject matter jurisdiction [docs. # 4, 5] is
13 GRANTED and the instant complaint is DISMISSED WITHOUT PREJUDICE in its
14 entirety for lack of subject matter jurisdiction.

15

16 Dated:     April 28, 2008

17

18                                    JOHN A. HOUSTON
19                                    United States District Judge

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

1  JAMES R. ROBIE, SBN 67303
2  KYLE KVETON, SBN 110805
   RONALD P. FUNNELL, SBN 209897
3  ROBIE & MATTHAI
   A Professional Corporation
4  500 South Grand Avenue, 15th Floor
   Los Angeles, California 90071
5  (213) 706-8000 • (213) 624-2563 Fax
   kkveton@romalaw.com
6  Attorneys for Plaintiff PROGRESSIVE WEST
7  INSURANCE COMPANY

8

9                 **UNITED STATES DISTRICT COURT**

10              **SOUTHERN DISTRICT OF CALIFORNIA**

11  PROGRESSIVE WEST INSURANCE  )    **CASE NO. 07 - CV 1999 JAH (POR)**
    COMPANY, an Ohio corporation,  )
12                                )
13              Plaintiff,        )    **OPPOSITION TO MOTION TO
                                  )    DISMISS FOR LACK OF SUBJECT
14       vs.                      )    MATTER JURISDICTION [RULE
    BUN BUN TRAN, LEONEL          )    12(b)(1)**
    ARRELLANO,                    )
15                                )
16              Defendants.       )    Date:    January 14, 2008
                                  )    Time:    2:30 p.m.
17  — — — — — — — — — — — — —     )    Ctrm:    11
                                       880 Front Street
18                                     San Diego, CA 92101

19

20       Plaintiff Progressive West Insurance Company ("Progressive") submits the

21  following Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter

22  Jurisdiction:

23

24

25

26

27

28

K:4-bl-Pleading-Oppo Mtn Dismiss.wpd                    1

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Progressive West Insurance Company ("Progressive") filed this action pursuant to the Federal Declaratory Judgment Act, 28 USCA § 2201. Defendant Bun Bun Tran ("Tran") has filed a motion to dismiss this lawsuit pursuant to Rule 12(b)(1), contending that this Court lacks subject matter jurisdiction to hear the case. Tran's motion is brought on two grounds: (1) the controversy between Progressive is not ripe because there is no judgment against Arrellano; and (2) the amount in controversy is "speculative" and does not meet the jurisdictional minimum. Neither ground has merit. Tran fails to acknowledge that this case is a declaratory relief action, subject to unique procedural requirements of the Declaratory Judgment Act and judicial interpretations of the Act.

Tran's failure to recognize the unique procedural requirements of a declaratory relief action is fatal to his motion. Established law provides that under the well-pleaded facts of the Complaint (as well the extrinsic facts presented by Tran's attorney's declaration), a litigable controversy exists between Progressive and Tran, and that the amount in controversy is well in excess of the jurisdictional minimum. Tran's motion must be denied.

## LEGAL DISCUSSION

### 1.    The Declaratory Relief Act.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction [except specified federal tax actions and bankruptcy proceedings] . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (28 USCA § 2201(a).) The Act allows adjudication of the parties' rights and obligations on a matter in dispute regardless of whether claims for damages or injunctive relief have yet arisen: "In effect, it brings to the present a litigable controversy which otherwise might only be tried in the future." (*Societe de*

1    *Conditionnement v. Hunter Eng. Co., Inc.* (9th Cir. 1981) 655 F.2d 938, 943; see also
2    *Dickinson v. Indiana State Election Board* (7th Cir. 1991) 933 F.2d 497.

3         Thus, contrary to defendant's protests, this action for declaratory relief may not
4    be dismissed because the issue is not ripe. "The purpose of the Declaratory Judgment
5    Act is to settle actual controversies *before* they ripen into violations of law or breach
6    of duty." (*United States v Fisher-Otis Co.* (10th Cir. 1974) 496 F.2d 1146, 1151,
7    emphasis added; *White v Califano* (D.S.D. 1977 ) 437 F.Supp. 543, aff'd (8th Cir.
8    1978) 581 F.2d 697 [purpose of declaratory judgment is to provide prospective
9    relief].) As shown below, an actual litigable controversy exists between Progressive
10   and Tran, a controversy which otherwise might only be tried in the future, and a
11   controversy which plaintiff desires to resolve now, through this properly filed
12   declaratory relief action.

13   2.    **An Actual Controversy Exists Between Plaintiff and Defendant.**

14        Plaintiff has properly alleged that an actual litigable controversy exists between
15   Progressive and Tran. The Complaint alleges that:

16        "20.   The correspondence, pleadings and discovery proceedings in the above
17   captioned lawsuit make clear that attorney Angelo intends to obtain a judgment
18   against Mr. Arrellano and then sue Progressive on behalf of Mr. Tran for breach of
19   contract and breach of the implied covenant of good faith and fair dealing for failure
20   to settle Mr. Tran's claim within policy limits.

21        21.    Attorney Angelo has accused Progressive of misconduct and claims that
22   Progressive's failure to accept Attorney Nguyen's January 26, 2007 policy limits
23   demand has eliminated the stated limits of the policy. As a result of the erroneous
24   contention that Progressive has "taken the lid off its policy" by not accepting
25   Attorney Nguyen's conditional demand of January 26, 2007, Mr. Tran claims, *inter
26   alia*, that a conflict of interest has arisen between Progressive's defense counsel and
27   Mr. Arrellano, that Mr. Arrellano should stipulate to a multi-million dollar judgment
28   and that Progressive should bear liability for these extracontractual claims. A copy of

1  the letter of June 28, 2007, from Mr. Tran's attorney is here attached as Exhibit 2.

2  Progressive denies and disputes these allegations and contends it has not rejected a

3  settlement within policy limits which would lead to such consequences claimed by

4  defendant Mr. Tran.

5      22.   An actual controversy has arisen and now exists between the parties

6  relating to the legal rights and duties of plaintiff and defendants under the involved

7  policy of insurance, for which plaintiff desires a declaration of rights.

8      23.   A declaratory judgment is necessary in that plaintiff contends it

9  discharged its obligations under the insurance policy and in accord with California

10  law and that its conduct in response to the letter of attorney Nguyen (Exhibit 1) did

11  not eliminate or jeopardize the $15,000 policy limits available on the contract at

12  issue."

13  (Complaint, ¶¶ 20-23.)

14      The evidence submitted by Defendant in support of its Motion further

15  demonstrates that an actual controversy exists. The Declaration of Joseph Di Monda

16  states: "It is TRAN's contention that Progressive did not tender the Liability Policy.

17  TRAN's position is that since Progressive failed to tender the Liability Policy when

18  demanded, the Liability policy has no liability limit and that Progressive is liable for

19  any amount which a jury may find ARELLANO must pay." (Declaration of Joseph

20  Di Monda, ¶ 14.)

21      Further evidence of Defendant's intention to pursue a bad faith action against

22  Progressive is attached to this Motion as Exhibit A. Exhibit A is a November 29,

23  2007 letter in which Tran's attorneys attempt to badger Progressive into agreeing to

24  an assignment of Arellano's bad faith claim to Tran. Enclosed with the letter is a

25  document entitled "AGREEMENT TO ASSIGN PROCEEDS AND COVENANT

26  NOT TO LEVY EXECUTION OF JUDGMENT OR, IN THE ALTERNATIVE, TO

27  STAY LEVY OF EXECUTION OF JUDGMENT." The Agreement provides that

28  Arellano will assign to Tran his claims against Progressive in exchange for a

1    covenant not to execute upon the judgment.. (Exh. A, pp. 3-6.)

2         In the event that Arrellano agrees to the assignment, Tran may recover from the

3    insurer both the amount of the judgment and whatever defense costs were incurred by

4    the insured. (*National Steel Corp. v. Golden Eagle Ins. Co.* (9th Cir. 1997) 121 F.3d

5    496, 501.) Even if Arrellano does not assign his rights, Tran may obtain a judgment

6    against Arrellano and sue Progressive as a third party beneficiary. (Cal. Ins. Code, §

7    11580(b)(2); *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942-944.) Either

8    way, Tran threatens litigation against Progressive.

9         A party seeking declaratory relief must show that an actual controversy exists.

10   (28 USCA § 2201.) The test is whether there is a "substantial controversy, between

11   parties having adverse legal interests, of sufficient immediacy and reality to warrant

12   the issuance of a declaratory judgment." (*Maryland Cas. Co. v. Pacific Coal & Oil

13   Co.* (1941) 312 U.S. 270, 273, 61 S.Ct. 510, 512; *Hillblom v. United States* (9th Cir.

14   1990) 896 F.2d 426, 430; *Venator Group Specialty, Inc. v. Matthew/Muniot Family,

15   LLC* (5th Cir. 2003) 322 F.3d 835, 838.)

16        The party seeking declaratory relief must show an explicit threat of litigation or

17   other action creating a reasonable apprehension that he or she will be subjected to

18   liability. (*Intellectual Property Develop., Inc. v. TCI Cablevision of Calif., Inc.* (Fed.

19   Cir. 2001) 248 F.3d 1333, 1340; *Paramount Pictures Corp. v. Replay TV* (CD CA

20   2004) 298 F.Supp.2d 921, 924.)

21        Declaratory relief may be proper even if a party's liability is contingent. An

22   "actual controversy" exists if the contingency is likely to occur. Thus, for example,

23   declaratory relief is frequently granted to insurers in coverage disputes with their

24   insureds, even though the insurer's liability to indemnify the insured is contingent on

25   its insured being held liable to a third party. (*Associated Indem. Corp. v. Fairchild

26   Industries, Inc.* (2nd Cir. 1992) 961 F.2d 32, 35.)

27        Here, it the evidence undisputed that Tran has made an explicit threat of

28   litigation against Progressive. Tran does not dispute the fact that he *will* sue

1  Progressive – attorney Di Monda's declaration admits that Tran will pursue
2  Progressive for any amount above the policy limit which a jury may find Arrellano
3  must pay. Thus, Tran has created a reasonable apprehension that Progressive will be
4  subjected to liability for any judgment against Arrellano in excess of the $15,000
5  policy limits. (*Intellectual Property Develop., Inc. v. TCI Cablevision of Calif., Inc.*
6  (Fed. Cir. 2001) 248 F.3d 1333, 1340; *Paramount Pictures Corp. v. Replay TV* (CD
7  CA 2004) 298 F.Supp.2d 921, 924.)

8          Further, although Progressive's liability is contingent on Arrellano's liability to
9  Tran in the underlying action, "[t]hat the liability may be contingent does not
10  necessarily defeat jurisdiction of a declaratory judgment action." (*Associated Indem.
11  Corp. v. Fairchild Industries, Inc.* (2nd Cir. 1992) 961 F.2d 32, 35, citing *American
12  Mach. & Metals, Inc. v. De Bothezat Impeller Co.*, 166 F.2d 535, 536, 76 U.S.P.Q.
13  (BNA) 549 (2d Cir. 1948); *National R.R. Passenger Corp. v. Consolidated Rail
14  Corp.*, 670 F. Supp. 424, 430-31 (D.D.C. 1987); and *Lumbermens Mut. Casualty Co.
15  v. Borden Co.*, 241 F. Supp. 683, 701 (S.D.N.Y. 1965). "Indeed, litigation over
16  insurance coverage has become the paradigm for asserting jurisdiction despite
17  "'future contingencies that will determine whether a controversy ever actually
18  becomes real.'" (*Associated Indem. Corp. v. Fairchild Industries, Inc.* (2nd Cir.
19  1992) 961 F.2d 32, 35, citing 10A C. Wright, A. Miller & M. Kane, Federal Practice
20  and Procedure, § 2757, at 586-587 (2d ed. 1983).)

21          The applicability of an insurer's policy limits as to an injured third party is the
22  proper subject of a declaratory relief action, as an actual controversy exists between
23  the parties. For example, the Seventh Circuit has held that a victim of an insured
24  need not wait until he or she has judgment against the insured before filing
25  declaratory relief action against insurer to ascertain that the policy remains in effect
26  up to the policy limit; suit can be filed before dispute with insurer is resolved, thus
27  maintaining victim's interest in insurance policy. (*Bankers Trust Co. v. Old Republic
28  Ins. Co.* (7th Cir 1992) 959 F.2d 677. ) As in *Bankers Trust*, through this lawsuit

1  Progressive seeks to ascertain that Mr. Arrellano's policy limits remain in effect.
2  Dismissal is unwarranted.

3  **3.    The Jurisdictional Amount in Controversy Is the Value of the Claims**
4        **Asserted Against the Insured, Not the Face Amount of the Policy.**

5        The Complaint alleges that Tran's damages, which he seeks to recover against
6  Arrellano, and in a future lawsuit will seek to recover from Progressive, are in excess
7  of $700,000. The evidence of the value of plaintiff's claim is Exhibit 1 to the
8  Complaint, a demand letter from defendant Tran's attorney. (Complaint, ¶ 11 and
9  Exh. 1.) Defendant admits that "TRAN's damages will reach tens of millions of
10 dollars." (Motion to Dismiss, page 3, line 18.)

11       The Declaratory Judgment Act is not an independent basis for federal
12 jurisdiction. (*Skelly Oil Co. v. Philips Petroleum Co.* (1950) 339 U.S. 667, 671.)
13 Thus, a party seeking declaratory relief must show that the controversy regards a
14 matter within federal court subject matter jurisdiction – the action must be either
15 between parties of diverse citizenship or "arise under" federal law. (*Fitts v. Federal*
16 *Nat'l Mrtg. Ass'n* (D.D.C. 1999) 44 F.Supp.2d 317, 330; USCA §§ 1331, 1332.)
17 Where diversity jurisdiction exists, the federal district court has discretion to hear a
18 declaratory judgment action. (*Avemco Ins. Co. v. Davenport* (9th Cir. 1998) 140 F.3d
19 839, 842, fn. 1.) Under the facts alleged (which are not disputed by defendant),
20 where the accident victim is a California resident and Progressive is an Ohio
21 corporation, the parties are of diverse citizenship, and federal subject matter
22 jurisdiction exists.

23       Diversity jurisdiction exists only 'where the matter in controversy exceeds the
24 sum or value of $75,000 exclusive of interest and costs ..." (28 USCA § 1332(a)].)
25 For diversity purposes under the Declaratory Relief Act, the amount in controversy is
26 the value of the object of the litigation. Where the action seeks a determination of
27 one party's liability to another, the amount of *potential liability* is the amount in
28 controversy, not the policy's limits, as Defendant contends.

1    For example, in *Hartford Ins. Group v. Lou-Con Inc.* (5th Cir. 2002) 293 F.3d
2    908, Hartford sued its insured for declaratory relief that its liability insurance policy
3    did not cover environmental pollution claims against the insured by third parties. The
4    policy had $1 million liability limits but the third parties' claims were less than
5    $75,000. The Court held that the jurisdictional amount in controversy was the value
6    of the claims presently asserted against Insured, *not* the face amount of the policy.
7    (*Id.* at 911 ["in declaratory judgment cases that involve the applicability of an
8    insurance policy to a particular occurrence, 'the jurisdictional amount in controversy
9    is measured by the value of the underlying claim- not the face amount of the
10   policy'"].)

11    Therefore, here, the value of Tran's underlying claim against Arrellano (and
12   Tran's future claim Progressive), *not* the $15,000 policy limit, is the proper measure
13   of the jurisdictional amount in controversy. Tran's attorney's demand letter asserted
14   that as of January 26, 2007, Tran's claim against Arrellano was in excess of
15   $700,000. Defendant admits that "TRAN's damages will reach tens of millions of
16   dollars." (Motion to Dismiss, page 3, line 18.) Either figure is well in excess of the
17   $75,000 jurisdictional minimum, and is sufficient to survive a Rule 12(b)(1) motion.
18   (*Farmilant v. Singapore Airlines, Ltd.* (ND IL 1983) 561 F.Supp. 1148, 1151 [on
19   motion to dismiss for want of subject matter jurisdiction, plaintiff "is entitled to the
20   speculative benefit of any facts he might conceivably prove in support of his well-
21   pleaded allegations"]; *Musson Theatrical, Inc. v. Federal Express Corp.* (6th Cir.
22   1996) 89 F.3d 1244, 1248 ["plaintiff can survive (a Rule 12(b)(1)) motion by
23   showing any arguable basis in law for the claim made"].)

24   **4.    Tran Misunderstands the Scope of This Declaratory Relief Action.**
25    Tran complains that Progressive has improperly filed this lawsuit in order to
26   obtain an advance determination of its bad faith liability before the underlying case is
27   resolved, and before the claims file is discoverable. (Motion, page 8, line 22 to page
28   9, line 27.)  In doing so, Tran intentionally mischaracterizes the scope of this

1    declaratory relief action, which does *not* implicate the totality of Progressive's claims
2    handling in the underlying case and does not pretend to serve as a substitute for a bad
3    faith lawsuit. Rather, this declaratory relief action was brought to determine the legal
4    relationship of the parties on a single, narrow issue:

5          A declaratory judgment is necessary in that plaintiff contends it
6          discharged its obligations under the insurance policy and in accord with
7          California law and that its conduct in response to the letter of attorney
8          Nguyen (Exhibit 1) did not eliminate or jeopardize the $15,000 policy
9          limits available on the contract at issue.

10   (Complaint, ¶ 23.)

11         Thus, Progressive merely seeks a determination on the actual controversy in
12   existence *now* between Progressive and Tran – whether attorney Nguyen's letter
13   (Exhibit 1 to the Complaint) was a policy limits demand and whether Progressive's
14   conduct in response to that one letter "eliminated" the $15,000 limits on Arrellano's
15   policy.

16         The issue before this Court is clearly and narrowly defined: was the letter from
17   attorney Nguyen a legally cognizable "policy limits demand"? If the letter was not
18   such a demand (for example if it called for performance outside the insurance
19   agreement or because it was not an unequivocal offer to dismiss and release the
20   insured in exchange for a payment of money within the coverage afforded by the
21   policy), then Progressive's indemnity obligation is still defined by the stated $15,000
22   limits under the policy. The entirety of Progressive's conduct in handling the
23   underlying claim need not be determined in this lawsuit.

24                              **CONCLUSION**

25         Defendant's motion is not well taken and must be denied. Judicial opinions
26   interpreting the Declaratory Relief Act, legal authority to which Defendant has turned
27   a blind eye, provide (1) that the facts involved in this lawsuit present a litigable
28   controversy; and (2) that the amount in controversy is measured by Tran's claim

1 | against Arrellano – a claim that Defendant's attorneys admit is worth "tens of
2 | millions of dollars."

3
4 | DATED: December 27, 2007

ROBIE & MATTHAI
A Professional Corporation

By: _____

JAMES R. ROBIE
KYLE KVETON
RONALD P. FUNNELL
Attorneys for Plaintiff PROGRESSIVE WEST
INSURANCE COMPANY

ANGELO & DI MONDA
A LIMITED LIABILITY PARTNERSHIP

CHRISTOPHER L. ANGELO          175 NORTH SEPULVEDA BOULEVARD          TELEPHONE: (310) 939-0099
JOSEPH DI MONDA  A.P.A.          MANHATTAN BEACH, CALIFORNIA 90266          FACSIMILE: (310) 939-0023

November 29, 2007

LEGAL - RECEIVED

DEC 0 3 2007

Sean W. Allen                          Sean W. Allen
Claims Attorney                        Claims Attorney
PROGRESSIVE CASUALTY                   PROGRESSIVE CASUALTY
INSURANCE COMPANY                      INSURANCE COMPANY
Claims Legal Department                Claims Legal Department
10940 White Rock Road                  P.O. Box 419061
Rancho Cordova, CA 95670               Rancho Cordova, CA 95741-9061
Phone: (916) 864-6271                  Phone: (916) 864-6271
Fax    : (916) 904-5563                Fax    : (916) 904-5563
http://www.progressive.com             http://www.progressive.com

    Re:    Your Insured        :    Arellano, Leonel
           Claim No.           :    060-409-287
           Date of Loss        :    11/18/06

Dear Mr. Allen:

    I have received your November 23, 2007 letter that is copied to Randy Winet. I left a voicemail message on your message machine asking you to first tell me why you did not get a copy of the "Covenant Assignment" from Randy Winet directly, the same Randy Winet that you copied on your November 23, 2007 letter. You never returned that telephone message of mine. Why?

    Your November 23, 2007 letter expressly states that you "do not have a copy of the "Covenant/Assignment" and, therefore, cannot provide any response. Please forward it to my attention. . . " Do you know why Mr. Randy Winet failed to send you a copy of the "Covenant Assignment" long ago when I first sent it to him personally? Is it because Mr. Winet does not want to ask Progressive's permission to reach and sign a stipulation that a covenant not to execute will not be used by Progressive later in an effort to attack the viability of Mr. Arellano's assignment of bad faith rights to collect the overlimits judgment against Progressive?

    Does Progressive believe that your November 23, 2007 letter request somehow allows it to disguise the otherwise close working relationship between it and Mr. Winet independent of the interests of Arrellano?

**11**

**EXHIBIT A**

ANGELO & DI MONDA
A LIMITED LIABILITY PARTNERSHIP

Sean W. Allen
Claims Attorney
PROGRESSIVE CASUALTY
November 29, 2007
Re:    Arrelano, Leonel
page 2

Despite your strange November 23, 2007 letter request asking for a document that you could have received long ago, enclosed please find a copy of the document you requested, entitled: "AGREEMENT TO ASSIGN PROCEEDS AND COVENANT NOT TO LEVY EXECUTION OF JUDGMENT OR, IN THE ALTERNATIVE, TO STAY LEVY OF EXECUTION OF JUDGMENT."

If Progressive is to be a signatory on the last page, it must be by a person who warrants that he has the authority to sign on behalf of Progressive Casualty Insurance Company, Progressive West Insurance Company and Progressive Insurance Co. One would have to add any other Progressive entity that is somehow involved in the underwriting and claims handling.

Very truly yours,

ANGELO & DI MONDA, LLP

By  CHRISTOPHER E. ANGELO

CEA/gh
Encl.

cc: Randy Winet

**12**

12 05 07  10:01 FAX 916 835 5657    PROGRESSIVE INS CO.    ☑001

## AGREEMENT TO ASSIGN PROCEEDS AND COVENANT NOT TO LEVY EXECUTION OF JUDGMENT OR, IN THE ALTERNATIVE, TO STAY LEVY OF EXECUTION OF JUDGMENT

This Agreement is entered into between Bun Bun Tran, by and through his mother and Guardian ad Litem, Le Thi Nguyen [hereinafter referred to as "plaintiff"] and Leonel Arellano [hereinafter referred to as "defendant"].

### RECITALS

1.    WHEREAS, the parties are currently engaged in litigation as more fully set forth in that certain action for damages entitled *Bun Bun Tran v. Leonel Arellano, et al.*, San Diego Superior Court case No. 37-2007-00065432-CU-PA-CTL [hereinafter referred to as "THE ACTION"], and

2.    WHEREAS, certain issues have arisen pertaining to a failure to settle all Bun Bun Tran bodily injury claims against Leonel Arellano on the part of Progressive West Insurance Company, Progressive Insurance Company and other Progressive entities [hereinafter referred to as "Progressive"], and

3.    WHEREAS, Leonel Arellano contends that Progressive breached the implied covenant of good faith and fair dealing and/or otherwise acted negligently or tortiously toward him, as a direct and legal result of which Arellano is now personally exposed to an adverse judgment in favor of Bun Bun Tran in THE ACTION in excess of Leonel Arellano's liability insurance policy limits, and

4.    WHEREAS, the parties wish to set forth herein their respective rights and obligations with regard to the continued prosecution and resolution of THE ACTION as well as the liabilities, exposures and risks relating thereto,

IT IS HEREBY AGREED AS FOLLOWS:

### MUTUAL PROMISES AND ASSIGNMENTS

1.    Leonel Arellano, for himself, his successors and assigns, hereby irrevocably assigns the proceeds, i.e. the money damages which he may recover and which he may be entitled to collect by way of settlement, award or judgment rendered in his favor and against Progressive in any insurance bad faith case based upon breach of the implied covenant of good faith and fair dealing or any other similar action which might or could potentially be filed by Leonel Arellano against Progressive arising out of personal overlimits exposure resulting from THE ACTION and seeking the same relief.

2.    The assignment of proceeds as set forth in paragraph 1 immediately preceding shall not exceed the amount of any judgment, award or settlement rendered in favor of plaintiff Bun Bun Tran against defendant Leonel Arellano in THE ACTION.  Such judgment shall

**13**

12 05 07  19:01 FAX 916 635 5657        PROGRESSIVE INS CO.                                ☎005

include the principal amount together with recoverable costs and accrued interest thereon at the legal rate until actually paid or satisfied.

3.    To the extent that defendant Leonel Arellano recovers damages, either compensatory or punitive, or both, against Progressive in his own insurance bad faith case based upon breach of the implied covenant of good faith and fair dealing, or in any similar action arising out of the same overlimits exposure subject matter and seeking the same relief, then to the extent that the total amount of such damages exceeds the amount of the bodily injury judgment in favor of Bun Bun Tran against defendant Leonel Arellano in THE ACTION as described in paragraph 2 immediately preceding, then such excess damages and the right to collect such excess damages shall be the sole property of Leonel Arellano.

4.    Upon the entry of judgment in favor of plaintiff Bun Bun Tran in THE ACTION, plaintiff Bun Bun Tran, as a judgment creditor, will petition for leave to file a complaint in-intervention in any future insurance bad faith lawsuit filed, if filed at all, by Leonel Arellano against Progressive for bad faith breach of the implied covenant of good faith and fair dealing and any similar related tort. Defendant Leonel Arellano hereby agrees to stipulate to the filing of said complaint-in-intervention by Bun Bun Tran. If Leonel Arellano never files his own insurance bad faith case against Progressive, this failure, it is so agreed, will in no way impair defendant Leonel Arellano's instant assignment to plaintiff Bun Bun Tran of Leonel Arellano's right to recover from Progressive the entire bodily injury judgment achieved by plaintiff Bun Bun Tran against defendant Leonel Arellano as a result of Progressive's breach of its contractual and extracontractual good faith and fair dealing duties, including the good faith duty to settle and investigate all claims owed by it to Leonel Arellano when handling the Bun Bun Tran claims against Leonel Arellano

5.    In consideration of the mutual promises made herein, defendant Leonel Arellano irrevocably agrees that he has not and will not release any rights he has against Progressive without the express written consent of plaintiff Bun Bun Tran.

6.    Plaintiff Bun Bun Tran reserves the unconditional right to settle with Progessive at any time under any terms and conditions and for any amount in his sole and exclusive discretion. In the event of any such settlement between Bun Bun Tran and Progressive, Bun Bun Tran will notify defendant Leonel Arellano of such settlement and will thereupon release defendant Leonel Arellano from any judgment liens and obligations under this agreement and will further cause a full satisfaction of judgment to be filed in favor of defendant Leonel Arellano in THE ACTION.

## COVENANTS

In consideration of the mutual promises set forth above, plaintiff Bun Bun Tran for himself, his successors and assigns, hereby covenants as follows:

      1.     Following entry of judgment in favor of Bun Bun Tran and against defendant Leonel Arellano in THE ACTION, plaintiff Bun Bun Tran agrees to stay levy of execution on said judgment pending the final outcome of the bad faith case against Progressive, whether such bad faith case is filed by plaintiff Bun Bun Tran as assignee of the bad faith rights of defendant Leonel Arellano up to the bodily injury judgment rendered in favor of Bun Bun Tran against Leonel Arellano, or whether such bad faith lawsuit is prosecuted jointly by Bun Bun Tran and Leonel Arellano as described in *Cain v State Farm* (1975) 47 Cal.App.3d 783.

      2.     The covenant to stay levy of execution of judgment as set forth in paragraph 1 immediately preceding shall be deemed a permanent covenant not to execute as long as Progressive does not in any way attack the legal validity of any assignment and/or covenant herein.

      3.     If, but only if, Progressive in any way attacks the legal validity of any such assignment and/or covenant herein, then, and until the validity of such assignment or covenant is judicially determined, such covenant shall be modified as follows:

        a.     The covenant shall be deemed only a temporary covenant by plaintiff Bun Bun Tran to stay execution of judgment until the final outcome of the insurance bad faith case, at which time, the judgment shall be subject to levy of execution,

b.    If any assignment or covenant not to execute shall be judicially determined to invalidate, defeat, negate, mitigate or minimize defendant Leonel Arellano's cause of action against Progressive in any way or Bun Bun Tran's claims as assignee of Leonel Arellano's bad faith claims or Bun Bun Tran's contemplated complaint-in-intervention against Progressive in any way, then such covenant shall be null and void and the covenant to stay execution set forth in subparagraph a immediately preceding shall terminate as provided therein.

APPROVED AS TO FORM AND CONTENT

Dated: _____         _____
                                Christopher E. Angelo
                                Angelo & Di Monda, LLP
                                Attorneys for Plaintiff Bun Bun Tran, by and
                                through his Guardian ad Litem, Le Thi
                                Nguyen


Dated: _____         _____
                                James O. McLaughlin
                                Winet, Patrick & Weaver
                                Attorneys for Defendant Leonel Arellano


Dated: _____         _____
                                Bun Bun Tran, by and through his Guardian
                                ad Litem, Le Thi Nguyen


Dated: _____         _____
                                Defendant Leonel Arellano

## PROOF OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 500 South Grand Avenue, 15th Floor, Los Angeles, CA 90071-2609.

On December 27, 2007, I served the foregoing document(s) described as:

**OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [RULE 12(b)(1)**

on all interested parties in this action by placing a true copy of each document, enclosed in a sealed envelope addressed as follows:

> *Attorneys for Plaintiff, Bun Bun Tran*
> Christoper E. Angelo, Esq.
> Joseph Di Monda, Esq.
> ANGELO & DI MONDA LLP
> 1721 No. Sepulveda Boulevard
> Manhattan Beach, CA 90266-5014
> Telephone:  (310) 939-0099
> Facsimile:  (310) 939-0023

( )  **BY MAIL:** as follows:  I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

( )  **BY PERSONAL SERVICE:** I delivered such envelope by hand to the above addressee(s).

(X)  **BY OVERNIGHT COURIER:**  I caused the above-referenced document(s) to be delivered to an overnight courier service (California Overnight), for delivery to the above addressee(s).

( )  **BY FACSIMILE TRANSMISSION:** I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the above facsimile number.

( ) **(State)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(X) **(Federal)**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 27, 2007, at Los Angeles, California.

Windy Gale Tyler

**EXHIBIT 3**

Case 3.07-cv-0199C JAH-POR    Document 15    Filed 04/29/2008    Page 1 of 1

AO 450 Judgment in a Civil Case

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Progressive West Insurance Compan

V.

Bun Bun Tran. Leonel Arrellano

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER:    07CV1999-JAH(POR)

☐    **Jury Verdict.** This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒    **Decision by Court.** This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that the instant complaint is dismissed without prejudice in its entirety for lack of subject matter jurisdiction.

| April 29, 2008 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |
| | s/J. Petersen |
| | (By) Deputy Clerk |
| | ENTERED ON April 29, 2008 |

# EXHIBIT 4

ANGELO & DI MONDA
A LIMITED LIABILITY PARTNERSHIP
1720 NORTH SEPULVEDA BOULEVARD
MANHATTAN BEACH, CALIFORNIA 90266

CHRIS DIMPER L. ANGELO
JOSEPH DI MONDA  A P.C.

TELEPHONE: (310) 545-0095
FACSIMILE: (310) 545-0091

May 12, 2008

Randall L. Winet
Winet, Patrick & Weaver
440 South Melrose Drive, Suite 200
Vista, CA 92081-6666

Sean W. Allen
Claims Attorney
PROGRESSIVE CASUALTY INSURANCE COMPANY
Claims Legal Department
P.O. Box 419061
Rancho Cordova, CA 95741-9061
Phone: (916) 864-6271
Fax   : (916) 904-5563
http://www.progressive.com

     Re:    *Bun Tran v. Leonel Arrellano, et al.*
             Your File No.: P21084
             Your Insured: Arrellano, Leonel
             Claim No.:   060-409-287
             Date of Loss:  11/18/06

Dear Mr. Winet and Mr. Allen:

     In response to your May 6, 2008 letter, please remember that my original Covenant/Assignment document states that your primary client, Arrellano, will have a covenant not to execute in exchange for his overlimits bad faith assignment, but that this covenant will be reduced to a lesser covenant to stay execution in the event Progressive claims, in some subsequent overlimits bad faith lawsuit, that Arrellano had nothing to assign because of the absolute nature of the Covenant not to execute. At the time this original Covenant/Assignment was sent by me to you, you should have hired an independent attorney to advise Arrellano. In other words, an attorney that did not have a "triangular" relationship with any insurer to cloud his or her representation of Arrellano, because of such conflicts of interests as you are experiencing now. You did not do this. As a result, you are trying to serve two masters, Progressive and Arrellano. Only one master is a defendant in the current bodily injury lawsuit and it is only this master that is currently facing personal overlimits exposure. Arrellano is the only defendant that that you are currently representing in litigation and I doubt that Progressive will ever ask you to represent it in any subsequent overlimits bad faith case involving any Bun Bun Tran overlimits' judgment.

ANGELO & DI MONDA

Messrs. Winet & Allen
May 12, 2008
Page 2

You apparently, and finally, recognize this conflict of interest relative to my original and continuing conditional Covenant Not to Execute document when you protest in your May 6, 2008 letter that my Covenant Not to Execute, which is not "new", is requiring "Progressive West Insurance Company to stipulate that the bodily injury judgment in The Action will be recoverable against Progressive if the jury ascertains that Progressive's earlier failure to settle Promissor's claim for policy limits was done in breach of the implied covenant of good faith and fair dealing." On this, you are absolutely right.

Of course, this is not only what we are asking, but it is what we are demanding because it is California law, whether Progressive stipulates to it or not. The real reason why you protest this is that Progressive wants to later argue a procedural technicality at the demurrer phase that a Covenant Not to Execute invalidates an assignment of bad faith rights unless the liability insurer consents to waiving this technical defense. Obviously, Progressive has told you that it will not consent to waiving such an argument, i.e., that an absolute Covenant Not to Execute invalidates any assignment. In other words, through it own negligence and claims handling, Progressive has exposed Arrellano to overlimits liability; yet, it refuses, by your letter's own admission, "to stipulate that the bodily injury judgment in the Action will be recoverable against Progressive if the jury ascertains that Progressive's earlier failure to settle [Tran's] claim for policy limits was done in breach of the implied covenant of good faith and fair dealing."

In other words, it is clear from your own statement that Progressive does not want my original Covenant Not to Execute language because it absolutely and completely protects Arrellano from any overlimits liability, but only as long as Progressive never contends in the future that such a covenant invalidates Arrellano's assignment of overlimits judgment rights to my client, Tran. By your own letter's admission, Progressive will not consent to my original Covenant Not to Execute because it **does intend to later argue** that any Covenant Not to Execute **without the insurer's consent** invalidates any insured's assignment of overlimits bad faith rights.

This continues to put you in a conflict of interest. One client (Arrellano) gets a complete Covenant Not to Execute but only if the other client (Progressive) consents and stipulates not to later argue that such a Covenant invalidates the (former's) assignability of overlimits bad faith judgment rights from Arrellano to Tran. You are trying to make me, of all people, cure a conflict that infects only your representation. I refuse to do this.

Again, your May 6th letter admits that Progressive does not want to "stipulate that the bodily injury judgment . . . will be recoverable against [it] if the jury ascertains that [it's] earlier failure to settle [Tran's] claim for policy limits was done in breach of the implied covenant of good faith and fair dealing." Progressive has no say in this since this is California law. The real truth is that Progressive does not want to consent to a Covenant Not to Execute that remains absolute and unconditional unless Progressive retains the power to invalidate the viability of

ANGELO & DI MONDA

Messrs. Winet & Allen
May 12, 2008
Page 3

Arrellano's assignment of overlimits bad faith rights to Tran. I will never give Progressive this power! Progressive is lying to you as to its real motivation.

California law is clear. A liability insurer "that breaches its duty of reasonable settlement is liable for all the insured's damages. . . , regardless of policy limits"; in other words, "where the underlying action has proceeded to trial and a judgment in excess of the policy limits has been entered against the insured, <u>the insurer is ordinarily liable to it's insured for the entire amount of that judgment.</u>" <u>Hamilton</u> v. <u>Maryland Casualty</u> (2002) 27 Cal.4th 718, 725. In my previous correspondence, I cited you to this recent California Supreme Court decision in <u>Hamilton</u>. Apparently, Progressive will not even "stipulate" to this California law according to the second paragraph on the first page of your May 6, 2008 letter to me. Please instruct Progressive that they have no choice but to follow California law or remove themselves from any business in California. Progressive cannot have it both ways. You cannot have it both ways. You must choose between two clients that have completely opposite interests.

Again, the deal as I propose is as follows. Arrellano gets a Covenant Not to Execute that is global. However, Progressive must consent never to argue that this Covenant Not to Execute impairs the ability of Arrellano to assign overlimits bad faith rights to Tran. Once a judgment is entered against Arrellano, the damages will have been established to support a second overlimits bad faith lawsuit. If the bad faith jury determines that the overlimits judgment was caused by Progressive's unreasonable failure to settle, Tran gets the judgment from Progressive, including that portion over the policy limits.

Very truly yours,

ANGELO & DI MONDA, LLP

CHRISTOPHER E. ANGELO

CEA:kle

C:\Legal Documents\Tran, Duc Duc's - Arrellano (traffic collision, brain damage)\Lets to Winet, Patrick & Weaver (McLaughlin and Weiner)Arrellano\Winet ltr 5-12-08.wpd

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA

3

COUNTY OF LOS ANGELES

4

      I am a resident of the aforesaid county. I am over the age of eighteen years and not a party to the within action; my address is 1721 N. Sepulveda Blvd., Manhattan Beach, California 90266.

5

6

      On **June 9, 2008**, I served the foregoing document(s) described as **DEFENDANT BUN TRAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION** on the interested parties in this action, by placing the original/true copies thereof enclosed in a sealed envelope addressed as follows:

7

8

Ronald P. Funnell
ROBIE & MATTHAI
500 South Grand Avenue
15th Floor
Los Angeles, CA 90071

9

10

11

      I caused such envelope/package containing the document(s) to be delivered by hand to the offices of the addressee(s).

12

<u>X</u>    The envelope was mailed with postage thereon fully prepaid. I am "readily" familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

13

14

15

—    I deposited the above document(s) for facsimile transmission in accordance with the office practice of Angelo & Di Monda for collecting and processing facsimiles. I am familiar with the office practice of Angelo & Di Monda for collecting, processing, and transmitting facsimiles. The facsimile of the above document(s) was transmitted to the interested parties on the attached service list:

16

17

18

Executed on **June 9, 2008**, at Manhattan Beach, California.

19

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

22

                          S/Joseph Di Monda
                          Joseph Di Monda

23

S:\Legal Documents\Tran, Bun Bun v. Arrellano (traffic collision, brain damage)\Pleadings\Progressive v. Tran, et al\Opposition

24

to Motion for Reconsideration\Points and Authorities.wpd

25

26

27

28